**Erle E. PEACOCK, Jr.,
Plaintiff-Appellant,**

v.

**BOARD OF REGENTS OF the UNIVERSITIES AND STATE COLLEGES OF ARIZONA et al., Defendants-Appellees.**

**No. 74–2259.**

United States Court of Appeals,
Ninth Circuit.

Feb. 4. 1975.

Certiorari Denied June 23, 1975.

See 95 S.Ct. 2668.

William Lee McLane (argued), Phoenix, Ariz., for plaintiff-appellant.

Jack J. Rappeport (argued), Tucson, Ariz., for defendants-appellees.

Before LUMBARD,* KOELSCH and WRIGHT, Circuit Judges.

## OPINION

KOELSCH, Circuit Judge:

Erle E. Peacock, Jr., appeals from an order of the district court granting him a preliminary injunction but for less than all the relief he sought. Our jurisdiction is predicated upon 28 U.S.C. § 1292(a).

From 1969 until late in 1973, appellant was a tenured Professor of Surgery and Head of the Department of Surgery at the University of Arizona's College of Medicine, a state school. He was employed under a written contract which during the events here in issue appointed him "Professor and Department Head in the Department of Surgery" "for the fiscal year 1973–1974 effective July 1, 1973. . . . ." The University, however, became dissatisfied with his administrative performance, and on October 25, 1973, summarily dismissed him as Head of the Department. An academic power struggle ensued, with further strife and bickering, during which, on February 11, 1974, the University suspended appellant as Professor of Surgery, again without a prior hearing, although in this regard offering him a post-suspension hearing on his status as professor.

On February 22, 1974, appellant instituted this suit for damages and equitable relief to redress the denial of his right, allegedly protected by the Due Process Clause, to a hearing prior to being deprived by the State of his protected property interests—his position as Head

---

* The Honorable J. Edward Lumbard, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

of the Department and his position as professor, both held under contract. *See* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Appellant also moved for a preliminary injunction reinstating him as Head of the Department, and removing his suspension as professor, until such time as the University afforded him a pre-deprivation hearing.

Ruling on the motion, the district court concluded with respect to the "headship" that appellant had a property interest in the position—a legitimate claim of entitlement of a year's duration created by the appointment papers—and that no circumstances existed warranting deprivation of that interest absent a hearing. However, the court declined to exercise its equitable powers to order full reinstatement. Instead, the court ordered the University to reinstate him as Head with the option of "reliev[ing] him from performing any duties as head pending a hearing in accordance with the rules and regulations, Faculty Manual, Chap. VIII 13 ed., regarding the dismissal of tenured faculty members." With respect to the professorship, the court likewise ruled that appellant had a cognizable property interest, and that his suspension without a hearing probably violated due process, but again refused to order reinstatement. It ordered the University to continue effective the offer to a post-suspension hearing.

Initially, appellant's appeal was from both aspects of the court's order. However, he has now advised us that during its pendency the University has reinstated appellant as professor. Accordingly, the parties stipulated that the portion of the court's order refusing to reinstate appellant as professor is no longer in issue and is withdrawn from the appeal. However, the question of the propriety of the order as it relates to appellant's

reinstatement as Head of the Department remains.[1]

Appellant contends, in substance: (1) that he possessed a property interest in the position as Head of the Department for a one-year term (ending June 30, 1974, eight and one-half months after he was dismissed); (2) that due process entitled him to a pre-deprivation hearing; (3) that the district court erred in refusing to order full reinstatement because it is as a matter of law an abuse of discretion to balance rights of a constitutional dimension against the state's interest in denying those rights, *see* Youngstown Sheet & Tube Co. v. Sawyer, 103 F.Supp. 569, 576 (D.D.C.1952); and, (4) that this court must remedy the district court's error now by ordering appellant's reinstatement, even though his contractual appointment has expired while the case was pending on appeal.[2] The University takes the position that a headship does not constitute a protected property interest; it argues (and submits a number of supporting affidavits) that the position is quasi-administrative, that under the common law of the campus (*see* Perry v. Sinderman, *supra*) the heads of departments are appointed by and serve at sufferance of the University President, that they can attain no tenure in the position, and that they are subject to the unfettered discretion of the President, who can dismiss department heads at any time and for any reason or for no reason.

As noted, the district court found that appellant had a "legitimate claim of entitlement" created by his one-year appointment—an interest of the sort protected under Perry v. Sinderman, *supra*. We think there is a great deal of merit in the University's contention that the contractual appointment should be read as merely delimiting the term during which appellant was to serve at sufferance, *see* Adams v. Walker, 492 F.2d

---

1. As a result, we express no opinion on the propriety of the district court's refusal to order appellant's reinstatement as professor.

2. Appellant contends that unless we order reinstatement, he will be left without an effective remedy for the district court's error in not granting preliminary relief. *Cf.* Stewart v. Pearce, 484 F.2d 1031 (9th Cir. 1973).

1003, 1007 (7th Cir. 1974), and that, as the position was terminable at will, he had no protected interest in it.

"Although comprehensive definition of the entitlement concept is not yet possible, the contexts in which prior notice and hearing have or have not been required provide guidance in determining the kinds of interests that are entitlements. An interest that gives rise to an entitlement is always a conditional interest, but not all conditional interests in governmental benefits give rise to entitlements. To create an entitlement, the law must remove the decision to grant the benefit from agency discretion. (See, e. g., Arnett v. Kennedy (1974) 416 U.S. 134, at 181–182, 94 S.Ct. 1633, 40 L.Ed.2d 15 (op'n of White, J.) (government employment terminable at will of government not subject to prior notice and hearing).)"

Geneva Towers Tenants Organization, etc., et al. v. Federated Mortgage Investors, Inc., et al., 504 F.2d 483, at 494. (9th Cir., 1974), (Hufstedler, J., dissenting). See Board of Regents v. Roth, supra, at 578, 92 S.Ct. 2701. However, in the present posture of the case, before a complete record has been developed at a trial on the merits, we are unwilling to hold that the district court's conclusion about the nature of the position was clearly erroneous.

 Nevertheless, assuming that appellant had a protected expectation of employment, we think the district court's order afforded him his due process rights. The University, as noted, did not provide appellant a hearing either before or after dismissing him as Head. The effect of the court's order reinstating appellant to the position but granting the University the option of suspending him from his duties pending a hearing was precisely the same as a ruling that the University action violated due process but that a hearing following a summary suspension was an adequate procedure.

We think that under the circumstances of this case, due process does not require a pre-suspension hearing, and that the district court's order declining to completely reinstate appellant pending such a hearing was proper.[3]

As we recently recognized:

"The Supreme Court, in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), enunciated a two-step process for analyzing cases involving deprivation of a governmental benefit. First, it must be ascertained whether the interest at issue is a constitutionally protected 'property' or 'liberty' interest. See id. at 262, 90 S.Ct. at 1011. Second, if the interest is a protected one, the beneficiary's interest in avoiding loss must be balanced against the government's interest in summary adjudication." Geneva Towers, supra, 504 F.2d at 488. (Footnotes omitted.)

To amplify the second point—"Once it is determined that due process applies, the question remains what process is due . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Notice and opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). To determine whether the opportunity to be heard provided was at a time sufficiently meaningful to satisfy due process, we must balance the University's interest in the form of procedure ultimately afforded appellant by the court against appellant's interests in a more rigorous procedure. See, e. g.. Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 et seq. (1970); Geneva Towers, supra, 504 F.2d 483. See Note, The Supreme Court, 1973 Term, 88 Harv. L.Rev. 13, 77, 85 (1974).

---

3. We do not reach the issue of whether the court may "balance the equities" to refuse to injunctively enforce a constitutional right, as

we conclude here that the court adequately enforced appellant's due process rights.

Appellant contends that absent exceptional circumstances (none of which here exists) the outcome of that traditional due process balancing test is presumptively weighted in favor of a prior hearing. He cites several cases to support his position—Fuentes v. Shevin, 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 259–260, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)—which, particularly *Fuentes*, indeed support his contention. *See also* Board of Regents v. Roth, *supra*, 408 U.S. at 570 n. 7, 92 S.Ct. 2701. Before the Court's decisions last term in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.E.d.2d 406 (1974), and Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), we might have agreed. *See* Geneva Towers, *supra*, 504 F.2d 483; Stewart v. Pearce, 484 F.2d 1031 (9th Cir. 1973). However, in *Mitchell* a majority of the Court applied the traditional balancing test unaided by a presumption in favor of a prior hearing and upheld a sequestration statute which provided only a post-seizure hearing. And in *Arnett* the Court upheld the OEO's employee dismissal procedures, under the Lloyd-LaFollette Act, 5 U.S.C. § 7501, even though the procedures provide a trial-type hearing only after termination. Three members of the Court explicitly applied a balancing test to reach the conclusion that a hearing post-removal was adequate, *see* 416 U.S. at 167–168, 94 S.Ct. 1633 (opinion of Powell, J., with which Blackmun, J., concurred), and 416 U.S. at 188, 94 S.Ct.

1633 (opinion of White, J.); and the plurality, two members of which joined in the *Mitchell* majority, went further to hold that the defined removal procedures limit a claim of entitlement created by the state as much as a substantive limit, and that adherence to those procedures satisfies due process.[4] We think the upshot of *Arnett* and *Mitchell* is that in considering the due process validity of the procedure provided we must apply the traditional balancing test without a presumption favoring a prior hearing.

So applying the test, we conclude that the procedure provided by the district court comported with due process. Appellant's interest in a hearing before rather than after he was suspended from the performance of his duties as Head of the Department was relatively slight. No financial interest is involved—the position was not remunerated, and appellant continued to receive his full professor's pay while suspended. Clearly appellant was not threatened with the spectre of brutal need which would dictate the necessity of a prior hearing. *Compare* Goldberg v. Kelly, *supra* (welfare benefits); *Sniadach, supra* (wage garnishment); *Geneva Towers, supra* (rent increases). The suspension pending a hearing did not impair appellant's liberty interests, *see* Board of Regents v. Roth, *supra*, at 573, 92 S.Ct. 2701, as the proposed termination was not for any reason which might stigmatize appellant in the way that a charge of dishonesty or immorality might.

We recognize that the suspension probably does adversely reflect on appellant. The prestige that attached to the holding of the position, and whatever

---

**4.** Assuming that the University is correct in contending that the campus understanding is that a head of a department is subject to discretionary removal at any time, and that in accepting the position appellant was likewise subject to such removal, the *Arnett* plurality's position would dictate that in that case appellant has no right to any hearing, as the removal procedures condition the substantive right. As six of nine Justices rejected the position in *Arnett*, we do not follow it here. *See* 416 U.S. at 166–67, 94 S.Ct. 1633 (Powell, J.); 416 U.S. at 177–78, 94 S.Ct. 1633 (White, J.); 416 U.S. at 211, 94 S.Ct. 1633 (Marshall, J.). Nevertheless, we note that the distinction drawn by those six Justices between substantive and procedural limitations on an "entitlement" is somewhat illusory in this case, as the common law of the campus understanding (if it exists) that a head of department is subject to summary removal, even if for cause, may equally lead either to the conclusion that such a removal satisfies due process, or that appellant does not have a substantive entitlement. *See* 88 Harv.L.Rev. at 87.

lustre it added to appellant's reputation as a doctor, may incidentally be temporarily diminished. Perhaps a suggestion of incompetence does result, even though the University never questioned his professional competence but sought to remove him solely because of his lack of cooperation stemming from differences of opinion about how to run a medical school. And a suspension, of course, temporarily prevents him from performing the tasks of the position, which he may enjoy and which may contribute to the development and maintenance of his career skills. *See* Lafferty v. Carter, 310 F.Supp. 465 (W.D.Wis.1970). (However, we are here discussing appellant's suspension as Head of the Department, not as a professor of surgery; and while the record indicates that the administrative position was important to him, its deprivation did not remove him from the "mainstream of his occupation" (310 F.Supp. at 470) as a teacher and surgeon.) Whatever damage appellant will suffer by a suspension is minimized by the requirement of a prompt post-suspension hearing, which limits the duration of the suspension and the extent of the damage he will suffer should the suspension later be found to have been unwarranted.

On the other side of the ledger is the University's interest in the prevention of harm to and efficient administration of the medical school and the University Hospital. The record indicates that although the head of a department at the University of Arizona is in immediate charge of administrative matters, the President and Board of Regents, being vested with the ultimate authority of the University, possess the power to make the decisions concerning the department and bear the responsibility for its proper operation. Consultation and compromise with a department head may in the end prove the best way for the President and Board to run the school. Nevertheless, as the ultimate authority, the President

and Board are entitled to have a department head follow their orders. Some measure of loyalty and cooperation is required; without that cooperation a segment of the University, here the medical school and the University Hospital, may be injured either by misadministration or a lack of administration. Thus, the University has a significant interest in suspending a potentially recalcitrant or disloyal department head in order to keep the channels of administration properly functioning, *cf.* Hostrop v. Board of Junior College District No. 515, 471 F.2d 488 (7th Cir. 1972); this is particularly true if his cooperation is not likely to improve pending a hearing. We conclude that the potential threat[5] to the administration of the medical school and the incidental threat of disruption of the functioning of the University Hospital was sufficient to outweigh appellant's limited interest in a pre-suspension hearing.

The various opinions in *Arnett, supra*, support our conclusion that the procedure ordered by the court satisfied due process. There, Justice White, in the course of expressing his conclusion that a pre-*termination* hearing was required, nevertheless observed:

> "One must also consider another type of cost to the Government if preseparation hearings were provided—the necessity of keeping a person on the scene who might injure the public interest through poor service or might create an uproar at the workplace. However, suspension with pay would obviate this problem." 416 U.S. at 194, 94 S.Ct. at 1664.

And Justice Powell, in his concurring opinion, expressed the view that a suspension with pay was unnecessary and that a post-termination hearing was adequate. 416 U.S. at 169 n. 4, 94 S.Ct. 1633. And finally, the three dissenters suggested that they, too, regard a suspension with pay pending a hearing in a better light than an immediate termination.

---

5. We do not intimate that appellant in fact refused to perform tasks assigned by the administration or that his lack of cooperation ever damaged either the medical school or the

Hospital—the University's interest in obviating a potential threat is here sufficient to justify the suspension pending a hearing.

In conclusion, we decide that under the circumstances of this case the ordered post-suspension hearing on appellant's status as Head of the Department satisfied the requirements of due process and that the court committed no error in limiting its injunction. We emphasize that under different circumstances, involving a more serious intrusion on a protected property interest, such as the professorship, or on a "liberty" interest, or an employment relationship in which loyalty and cooperation are less imperative, a pre-deprivation hearing may be required.

Affirmed.