805 F.2d 1035
 35 Ed. Law Rep. 1046
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert L. MC LAURIN, Plaintiff-Appellant,
v.
Josef E. FISCHER, Defendant-Appellee.
 No. 86-3214.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1986.
 
 Before KENNEDY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff-appellant Dr. Robert L. McLaurin ("Dr. McLaurin" or "appellant") appeals the jury verdict in favor of defendant-appellee Dr. Josef E. Fischer ("Dr. Fischer") in the United States District Court for the Southern District of Ohio. The jury found that Dr. McLaurin did have a property interest in his former position as Director of the Division of Neurosurgery, but that he received due process from the University of Cincinnati ("the U. of C."). Appellant claims that he was entitled to a full hearing on the merits before the dismissal became final. For the reasons stated below, we deny appellant's request for judgment as a matter of law and affirm the judgment of the District Court.
 
 
 2
 Appellant became a tenured professor at the U. of C. College of Medicine in 1955. In that same year he was appointed Director of the Division of Neurosurgery at the U. of C. He claims that he was induced to take the position by promises that the position would be permanent and that he would be in charge of both the resident training program and patient care. Dr. McLaurin continued as director until his dismissal on April 7, 1982.
 
 
 3
 In January, 1981, appellant suggested to Dr. Fischer, Director of the Department of Surgery, that he seek an objective review of the status of the Division of Neurosurgery. Dr. Fischer appointed a review committee ("the Wulsin Committee") to review and report on the successes and problems of the division. The Wulsin Committee consisted of five Cincinnati doctors. In addition, a second committee ("the Alexander Committee") was formed consisting of three outside doctors. The Wulsin Committee report incorporated the report of the Alexander Committee.
 
 
 4
 The Wulsin Committee interviewed various people, individually and confidentially. The first person it interviewed was Dr. McLaurin himself. The committee also interviewed residents training under Dr. McLaurin, and several faculty members. On February 10, 1982, Dr. Fischer received a preliminary copy of the committee's report. The committee found numerous problems with the Division of Neurosurgery. In conclusion, it recommended that Dr. McLaurin "be encouraged to relinquish the burden of serving as Director of Neurosurgery." Joint Appendix at 122. Dr. McLaurin received a copy of the final report of the Wulsin Committee on February 25, 1982.
 
 
 5
 Dr. McLaurin met with Dr. Fischer two or three times before April 7, 1982. He claims that he attempted to address what he thought were inaccuracies in the report, but that Dr. Fischer would not discuss the report. Thus, appellant claims he was not informed of the reasons for his dismissal prior to the actual event. He received a letter confirming his dismissal on April 12, 1982, and responded by letter that there were inaccuracies and unsubstantiated claims in the report. Appellant also met with the dean of the medical school, but claims that he too refused to discuss the report with him. Dean Daniels later stated in a letter that Dr. Fischer had the right to relieve Dr. McLaurin based on the report. He added that he would convene an administrative appeal if appellant so requested. Appellant did not request such an appeal.
 
 
 6
 Dr. McLaurin requested that Dr. Fischer provide him with the reasons, in writing, for his dismissal. When he did not receive the reasons, he filed a grievance with the College of Medicine's Grievance Committee. The grievance committee found that appellant could be removed by Dr. Fischer and that Dr. Fischer was in no way obligated to provide the reasons for his action. It did request, however, that Dr. Fischer send appellant the reasons for his action. Dr. McLaurin received the list of reasons on January 10, 1983, and responded in great detail by letter addressed to the grievance committee.
 
 
 7
 Dr. McLaurin appealed the College of Medicine's Grievance Committee decision to the Faculty and Librarians' Grievance Committee. This committee also found that Dr. Fischer was free to dismiss Dr. McLaurin from his position as director at will. Appellant then filed suit in United States District Court, under Sec. 1983. In the original case before the District Court, two federal causes of action were alleged, age discrimination and denial of due process. The District Court dismissed the due process claim, holding that appellant had not established a property interest in his position. The age discrimination claim was submitted to the jury, which returned a verdict in favor of Dr. Fischer. This Court affirmed the dismissal of the age discrimination claim but remanded the case for a new trial on the due process issue. McLaurin v. Fischer, 768 F.2d 98 (6th Cir.1985). The Court stated that there was evidence from which the jury could have found a property interest. The current appeal is from the trial held on remand.
 
 I.
 
 8
 Dr. McLaurin raises on appeal the claim that he was denied due process. He asserts that because the jury found that he had a property interest in his position as director, he was entitled to a pre-deprivation hearing. He specifically challenges two instructions given by the District Court judge. First, the Court refused to give a requested instruction stating that due process required a pre-deprivation hearing, as opposed to a post-deprivation hearing. Appellant claims that, as a matter of law, the hearing must have been conducted prior to the deprivation. Second, the Court gave an instruction stating that a grievance procedure may constitute sufficient due process if it fulfills the necessary requirements. Appellant challenges these instructions as erroneous. He asserts that the erroneous instructions require reversal and that he is entitled to judgment as a matter of law.
 
 
 9
 In Cleveland Bd. of Educ. v. Loudermill, the Court held that the due process clause requires that an individual be given an opportunity for a hearing before being deprived of a significant property or liberty interest. 470 U.S. 532, 105 S.Ct. 1487 (1985). The plaintiffs in Loudermill were government employees who were given no opportunity to respond prior to being discharged from public employment. The Supreme Court affirmed this Court's application of the Mathews v. Eldridge balancing test and found that the plaintiffs' interests in a hearing outweighed the government's interest in immediate termination. See id. at 1495; Loudermill v. Cleveland Bd. of Educ., 721 F.2d 550, 561-62 (6th Cir.1983) (citing Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976)). The Court stressed the fact that the plaintiffs had been discharged from public employment and had lost their livelihood: "We have frequently recognized the severity of depriving a person of the means of livelihood." Loudermill, 105 S.Ct. at 1494. Cases in which courts of appeals have required a pre-deprivation opportunity to respond under Loudermill have also involved the complete discharge of a public employee. See Brasslett v. Cota, 761 F.2d 827 (1st Cir.1985); Kelly v. Smith, 764 F.2d 1412 (11th Cir.1985); Lee v. Western Reserve Psychiatric Habilitation Center, 747 F.2d 1062 (6th Cir.1984).
 
 
 10
 The Court of Appeals for the Ninth Circuit addressed a situation similar to the case before this Court and found due process requirements satisfied by a post-deprivation review. See Peacock v. Board of Regents, 597 F.2d 163 (9th Cir.1979); Peacock v. Board of Regents, 510 F.2d 1324 (9th Cir.), cert. denied, 422 U.S. 1049 (1975). In Peacock, the plaintiff was dismissed from his position as head of the Department of Surgery at the University of Arizona College of Medicine, although he continued as a professor of surgery. The District Court ordered that the doctor be reinstated, but that the university "may at its option relieve him" after a hearing. Peacock, 380 F.Supp. 1081, 1087 (D.Ariz.1974). The Court of Appeals for the Ninth Circuit affirmed the District Court, stating that the order of temporary reinstatement had the effect of authorizing removal followed by a post-deprivation hearing. The court found that the doctor was not deprived of his livelihood and thus held that he was not entitled to a hearing before he was deprived of his title. Peacock, 510 F.2d at 1327.
 
 
 11
 In considering plaintiff's appeal from the injunction granted by the District Court, the Court of Appeals for the Ninth Circuit stated:
 
 
 12
 So applying the test, we conclude that the procedure provided by the district court comported with due process. Appellant's interest in a hearing before rather than after he was suspended from the performance of his duties as Head of the Department was relatively slight. No financial interest is involved--the position was not remunerated, and appellant continued to receive his full professor's pay while suspended.
 
 
 13
 Peacock, 510 F.2d at 1328. The court further emphasized that:
 
 
 14
 (However, we are here discussing appellant's suspension as Head of the Department, not as a professor of surgery; and while the record indicates that the administrative position was important to him, its deprivation did not remove him from the "mainstream of his occupation" (310 F.Supp. at 470) as a teacher and surgeon.)
 
 
 15
 Id. at 1329. The court's analysis in Peacock is equally appropriate in the case before this Court. Appellant was not deprived of his livelihood. He was removed from an administrative position and deprived of the title accompanying that position. He continued as a full professor in the Division of Neurosurgery and he experienced no reduction in salary. Appellant was not deprived of a "significant" interest as defined by the Loudermill Court. Accordingly, appellant was not entitled to a pre-deprivation hearing and the District Court did not err in refusing to instruct the jury that due process in this case required such a hearing.
 
 
 16
 The post-deprivation process that took the form of a grievance hearing and appeal was sufficient to fulfill due process requirements. The grievance procedure was provided for by the collective bargaining agreement of the U. of C. faculty. Appellant was entitled to and participated in two full adversary hearings at which he was represented by counsel. During these hearings, appellant had the opportunity to present evidence, testify, and confront witnesses. He was heard on the merits of each issue he chose to raise before the grievance committees.
 
 
 17
 Even if appellant was found to be entitled to a pre-deprivation hearing, this Court finds, in accordance with appellant's own testimony and admission, that appellant received sufficient notice of the charges and a sufficient opportunity to respond under Loudermill. He was aware that problems existed within his division. He and Dr. Fischer had been meeting regularly to discuss and attempt to resolve some of these problems. At the time of the review by the Wulsin Committee, a review he requested, Dr. McLaurin was interviewed and questioned about the division. On February 25, 1982, he received a copy of the report of the committee, which explicitly stated that he should be encouraged to resign his position. These facts establish that appellant had notice of the charges against him.
 
 
 18
 Regarding Dr. McLaurin's opportunity to respond, the Supreme Court in Loudermill discussed the form that a pre-deprivation hearing must take. The Court stated that in a case such as Loudermill, due process requires "some pretermination opportunity to respond. For example ... [due process may be] satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." 105 S.Ct. at 1493. It emphasized that a hearing need not be elaborate, and "need not definitively resolve the propriety of the discharge." Id. at 1495. The employee need simply be provided an opportunity to present his side of the story, either verbally or in writing.
 
 
 19
 Several courts of appeals have further defined the requirements of pre-deprivation proceedings. In a case before this Court, the plaintiff was discharged after receiving a letter stating the charge against him and appearing before a committee to answer questions. Lee, 747 F.2d at 1062. This Court held that the plaintiff was given an abbreviated opportunity to respond, sufficient due process under Loudermill. See id. at 1068. In Brasslett v. Cota, the Court of Appeals for the First Circuit held that a one hour meeting with the plaintiff's superior satisfied due process requirements. Brasslett, 761 F.2d at 827. The court stated: "In his one hour conference with Manager Cota, Brasslett was notified of the possibility of discharge and was afforded an ample opportunity to defend his actions and rebut any erroneous allegations." Id. at 836. The Eleventh Circuit found sufficient due process where the plaintiff received oral notice of his possible discharge as opposed to written notice. Kelly, 764 F.2d at 1412. The plaintiff was told that if he did not agree to work "standby," he would be discharged. The court held that Loudermill required only oral notice and an opportunity to respond orally to the charge and that the plaintiff had received sufficient due process. Id. at 1414.
 
 
 20
 Appellant had ample opportunity to respond to Dr. Fischer orally and in writing. In fact, he had greater opportunity than the plaintiff in Kelly, who was actually discharged. After appellant received a copy of the committee's report, but before his dismissal, he met with Dr. Fischer several times. In his formal statement of grievance, appellant acknowledged that "[his] dismissal occurred abruptly but after several discussions in which [he] expressed some disagreement with the findings of a Review Committee previously appointed by Dr. Fischer-Dean." Defendant's Exhibit U, Joint Appendix at 69 [same as Plaintiff's Exhibit 39]. In addition, appellant testified that he did not submit anything in writing to Dr. Fischer because "[he] submitted to him verbally that [he] felt there were inaccuracies." Joint Appendix at 81. The evidence indicates that appellant had ample time and opportunity to review the report of the Wulsin Committee, to prepare his answers, and to present his response to Dr. Fischer.
 
 II.
 
 21
 This Court holds that appellant was not entitled to a pre-deprivation hearing where he was removed only from an administration position, not from his employment. The post-deprivation hearing provided to the appellant in the form of a grievance procedure was sufficient to satisfy the requirements of due process. Even if appellant was found to be entitled to a pre-deprivation hearing, there is sufficient evidence to indicate that he received an opportunity to respond before he was dismissed from his position. We affirm the judgment of the District Court in favor of Dr. Fischer.