Jeffrey A. DAURY, et al.,
Plaintiffs, Appellants,

v.

Charles SMITH, et al.,
Defendants, Appellees.

No. 87–1764.

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 1988.

Decided March 11, 1988.

---

5. Joint Appendix, Vol. I, p. 359.

6. *Id.,* p. 406.

**10**

Maurice M. Cahillane with whom Egan, Flanagan, Egan, P.C., Springfield, Mass., was on brief, for plaintiffs, appellants.

Ralph Cianflone, Jr., with whom Cianflone & Cianflone, P.C., Pittsfield, Mass., was on brief, for defendants, appellees Charles Bordeau and John Davis.

Samuel A. Marsella and Doherty, Wallace, Pillsbury & Murphy, P.C., Springfield, Mass., on brief, for defendants, appellees Charles Smith, George Desnoyers, Edwin R. Grady, Toby L. Hekler, Augusta Liebowitz, George Newell, and Evelyn Perera.

Michael J. McCarthy, City Sol., on brief for defendant appellee Pittsfield School Committee.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant Jeffrey Daury appeals the grant of summary judgment in favor of defendants-appellees in his action for deprivation of constitutional rights under 42 U.S.C. § 1983. Daury, a "grade leader" in the Pittsfield, Massachusetts school system, alleged in three counts of his complaint that the defendants,[1] by requiring him to consult a psychiatrist as a condition of continued employment, deprived him of his right to privacy as guaranteed by the ninth and fourteenth amendments and his right to liberty as guaranteed by the fourteenth amendment. Daury claimed that as a result of defendants' action he suffered emotional distress, mental anguish, and damage to his health and well-being. Daury further claims that the decision to require him to see a psychiatrist was made in retaliation for his "union activities and free speech" and constituted intentional infliction of emotional distress. Daury also ad-

1. Defendants comprise the Pittsfield school committee, individual members of that committee, both in their individual and official capaci- ties, John Davis, the superintendent of the Pittsfield schools, and Charles Bordeau, the assistant superintendent of the Pittsfield schools.

vanced two pendent state law counts, alleging violations of Massachusetts statutory protections relating to privacy and to the necessity for "open meetings" of governmental bodies. *See* Mass.Gen.Laws Ann. ch. 214, § 1B (West 1958 & Supp.1987); Mass.Gen.Laws Ann. ch. 39, § 23B (West 1985); Mass.Gen.Laws Ann. ch. 12, § 11I (West 1986).[2]

Defendants filed a motion for summary judgment, and a magistrate recommended that the court rule in favor of defendants. Following the filing of Daury's objections to the magistrate's report, the district court conducted a *de novo* review and granted summary judgment on the section 1983 claims.[3] The court determined not to exercise jurisdiction on the pendent state law claims and dismissed the entire complaint. Daury only appeals the grant of summary judgment.[4]

## I. *Standard of Review*

Summary judgment is only appropriate when the pleadings and other submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To demonstrate that no genuine issue of material fact exists, the moving party must point out "an absence of evidence supporting the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In reviewing the trial court's grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion, and must indulge all inferences favorable to that party. *Metropolitan Life Insurance Co. v. Ditmore,* 729 F.2d 1, 4 (1st Cir.1984); *King v. Williams Industries, Inc.,* 724 F.2d 240, 241 (1st Cir.1984), *cert. denied,* 466 U.S. 980 (1986). But this does not mean that the opposing party may simply assert, without more, that its version of the case is true. As we stated in *Perez de la Cruz v. Crowley Towing & Transportation Co.,* 807 F.2d 1084, 1086 (1st Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987): "[T]he party opposing summary judgment 'may not rest upon the mere allegations ... of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.'" (citing Fed.R.Civ.P. 56(e)). A genuine issue is "one in which the party opposing summary judgment provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). With this standard in mind, we turn to the facts.

## II. *The Facts*

Jeffrey Daury began work for the Pittsfield school system in 1970 as a school principal. Two general aspects of his tenure are relevant to this appeal. First, Daury's favorable work evaluations began to decline in 1979 because defendants received an above average number of complaints concerning Daury from parents. Daury admits that some complaints did issue, but denies the foundation for many of them. Second, from 1979 until some time in 1983, Daury was a member of the negotiating team for the Pittsfield Teacher's Association. Daury asserts that he was very vocal in this role, but concedes that nothing unusual—neither strikes nor picketing—occurred during any period of contract negotiations.

In May 1983, the school committee decided to close one of the schools in the district because of bugetary constraints. It, therefore, became necessary to demote one prin-

---

**2.** There is also a count by Mary Ellen Daury, Jeffrey Daury's wife, for loss of consortium. Because her rights are wholly dependent upon Jeffrey Daury's claims, we treat the appeal as if Jeffrey Daury were the sole plaintiff.

**3.** The individual members of the school committee raised the defense of qualified immunity. The district court did not rule on this claim, nor do we.

**4.** The defendants brought a third-party complaint against the Massachusetts Teachers Association (MTA). The motion for summary judgment of the MTA, as third-party defendant, was granted by the district court. No appeal from that ruling has been filed.

cipal; the committee decided upon Daury, and he was demoted to his present position of grade leader. Daury initiated a grievance procedure, but subsequently abandoned it. The committee has averred that its decision was in strict accordance with the requirement under the collective bargaining agreement that it consider both seniority *and* performance in deciding upon the demotion of a school principal.

Defendants point to three incidents, as well as other matters, leading to their decision to require that Daury see a psychiatrist. The first incident took place in October 1982. During a meeting about school funds between Daury and Theodore Herberg, director of research for the Pittsfield schools, Daury brought up a personal matter. The conversation turned into a near physical altercation; Daury received a written reprimand from Superintendent Davis. Daury filed a grievance and an arbitrator upheld the reprimand.

The second incident occurred in November 1982. Daury discovered documents in his personnel file that he had not signed. This was contrary to the collective bargaining agreement, which required that any document placed in a teacher's personnel file must be first signed by the teacher. Later that same day, Daury encountered Davis and another school administrator in the school parking lot. An argument concerning the unsigned documents ensued, as a result of which Davis suspended Daury for three days without pay. Again Daury filed a grievance. The arbitrator reduced the suspension to one day, and ordered the documents removed from Daury's file.

The final incident which prompted the school committee to require that Daury see a psychiatrist took place on June 3, 1983. Daury was supervising students crossing the street when a boy (not, as it developed, a student at Daury's school) began to cross in an unsafe manner. Daury told the boy to stop, and the boy swore at him. Daury took hold of him. According to Daury, he held the boy's arm. Defendants were told that Daury grabbed the boy by the neck. A police officer intervened and the boy was released. The boy's parents initiated a criminal complaint against Daury for assault and battery. Two witnesses, including the police officer, testified at trial that Daury put a "stranglehold" on the boy. One of these witnesses, a woman who allegedly viewed the entire incident, had telephoned Davis reporting the incident soon after it happened. Daury was found not guilty and the presiding judge praised his behavior as responsible.

Prior to the criminal trial, Daury and his attorney met in Davis' office with a representative of the Massachusetts Teachers Association (MTA), Assistant Superintendent Bordeau, and Superintendent Davis. Both Bordeau and Davis assert that Daury stated at the meeting that he was under a great deal of pressure and that he thought he needed some tranquilizers. It was tentatively agreed that Daury would be put on a leave of absence with pay until the end of the school year—that is, until the end of June 1983.

The school committee formally approved the paid leave at a meeting held that same evening. In addition, the committee decided that Daury be required to see a psychiatrist before returning to work. In their depositions, the committee members gave three reasons for this decision: their concern for Daury's health, their concern for the children under his care, and possible school liability stemming from some future action of Daury.

Bordeau scheduled an appointment for Daury with a psychiatrist, Dr. Richard Culley. Daury canceled the appointment, and his attorney challenged the doctor's qualifications. Eventually Daury and the school committee agreed that Daury would see the psychiatrist on the understanding that should Dr. Culley's report prove unfavorable, the committee would pay for a second evaluation by a psychiatrist of Daury's choice. Daury did not file a grievance objecting to the requirement that he consult a psychiatrist.

In September, an attorney from the MTA, who was also representing Daury, wrote to Bordeau requesting a detailed list of all incidents that gave rise to the school committee's concern for Daury's health.

Bordeau prepared a letter listing twenty-three reasons, including, *inter alia,* the October and November 1982 altercations with administrators, the testimony of the two witnesses at Daury's criminal trial, and Daury's own admission just before the criminal trial that he was under pressure and needed tranquilizers. Bordeau sent a copy of that letter to Dr. Culley, who had previously requested additional information from the school committee.

Dr. Culley met with Daury three times. He then issued a report favorable to Daury and critical of the school system. The report stated that the school system was biased against Daury. The report contains some mention of Daury's home life and family history, but focuses primarily on the events set forth in Bordeau's letter. The school committee reinstated Daury immediately following the receipt of Dr. Culley's letter in October, 1983.

In November, after Daury had been reinstated, the school committee asked Dr. Culley to attend a meeting to discuss his report. Daury was neither informed of nor invited to the meeting. The discussion during the meeting centered on the factual bases for Dr. Culley's conclusion that the school system was biased against Daury. Daury's union activities also came up at some point; Dr. Culley indicated that an opinion was voiced that Daury's union activity was self-serving.

Dr. Culley subsequently attempted to schedule another meeting with Daury, but Daury refused to see him. Dr. Culley then filed an addendum to his report stating that he had been too critical of the school system because his opinion had been formulated solely on Daury's account of the relevant facts.

On August 7, 1984, Daury filed suit against the defendants.

### III. *Right to Privacy*

 Daury alleges that the school committee's order that he see a psychiatrist violated his constitutional right to privacy. More specifically, he maintains that compelling him to submit to a psychiatric examination as a condition to his continued employment forced him to reveal information about his marriage, family history, and other personal relationships, and that this constituted an invasion of privacy regardless of the promise given by the school committee to keep the report confidential.[5]

That a person has a constitutional right to privacy is now well established. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Such right includes "the individual interest in avoiding disclosure of personal matters...." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). The privacy right, however, must often give way to considerations of public interest. In *Whalen,* a group of patients and physicians challenged a New York statute mandating the computer recording of all prescriptions for a certain class of drug. The data recorded under the statute included the name, address, and age of the patient, the name and dosage of the drug, and the prescribing physician's name. *Id.* at 593, 97 S.Ct. at 873. Several security measures, including a locked wire fence and an alarm system, were in force to prevent public disclosure of the information. *Id.* at 593–94, 97 S.Ct. at 873. And the statute itself prohibited such disclosure by treating a willful violation as a crime. *Id.* at 594–95, 97 S.Ct. at 873–74. Although the plaintiffs argued that the statute infringed upon their interest in avoiding disclosure of personal matters, *id.* at 599–600, 97 S.Ct. at 876–77, the Court found it to be a valid exercise of police power, despite evidence that the legislation did not in fact accomplish its stated goal of minimizing the misuse of drug prescriptions. *Id.* at 598, 97 S.Ct. at 875–76.

---

**5.** Although the magistrate found, based in part upon Daury's failure to file a grievance, that Daury had *consented* to see the psychiatrist, we agree with the district court that the voluntariness of Daury's action is not clear. Essentially, the school committee presented Daury with two "alternatives": see the psychiatrist or remain on leave. It is hard to characterize Daury's decision to see the psychiatrist under this circumstance as totally unconstrained.

In *Lyons v. Sullivan,* 602 F.2d 7 (1st Cir.), *cert. denied,* 444 U.S. 876, 100 S.Ct. 159, 62 L.Ed.2d 104 (1979), we held that a matter of public concern overrode the right to privacy. Lyons, a public school teacher, filed an unusual complaint in a medical malpractice action, which led the school superintendent to question his mental stability. The superintendent required Lyons to place himself in the care of a psychiatrist as a condition to his continued employment. Lyons refused to see the psychiatrist and resigned. *Id.* at 9. He then filed suit under section 1983 against the superintendent and the school committee, alleging, *inter alia,* that he was deprived of property, his tenured teaching position, without due process in violation of the fourteenth amendment. We found that the superintendent had a reasonable basis for questioning Lyons's mental condition, and that there was no constitutional infirmity in the course of conduct pursued. *Id.* at 10.[6]

■ As *Lyons* implicitly recognizes, there is a legitimate public interest in providing a safe and healthy educational environment. A school committee, therefore, may justifiably compel a teacher or administrator to submit to a psychiatric examination as a condition of continued employment if the committee has reason to believe that the teacher or administrator may be jeopardizing the welfare of students under his or her supervision.

Viewing the evidence in the light most favorable to Daury, we find no violation of his constitutional rights in the school committee's requiring that Daury see a psychiatrist. The committee simply sought a professional opinion to insure that Daury would not, if he returned to work, jeopardize the school system's interest in providing a safe and healthy educational environment. *See Lyons,* 602 F.2d at 10. And Daury offered no specific evidence contradicting the committee's position that it had a reasonable basis for concern.

Daury argues that the June 3, 1983 incident could not have been a real basis for concern because he was eventually acquitted of the criminal charge filed against him. But when the school committee decided to require Daury to see a psychiatrist he had not yet been tried. The committee had the following information: (1) the report of at least one witness that Daury had put the boy in a "stranglehold"; (2) the admission by Daury soon after the incident that he was under pressure and in need of tranquilizers; and (3) information that the boy's parents had filed a criminal complaint against Daury. Even if we assume, as Daury contends, that he grabbed the boy by the arm and not around the neck, the fact that the boy's parents filed a criminal complaint suggests that Daury's reaction to the boy's conduct was severe enough to question his ability to handle the supervision of children, some of whom may be disruptive at times.

In light of all of the information the school committee had—the June 3 incident, Daury's statement that he was under pressure and needed tranquilizers, the two incidents in which he precipitated physical confrontations, and the complaints by parents, —we think it was eminently reasonable for the school committee to require that Daury submit to a psychiatrict examination.

Daury also contends that certain facts were inaccurate in complaints about him sent in by parents. But Daury does not dispute that a number of parents did file such complaints. All that Daury offers to refute the statements and averments of the school committee are his own allegations, without any specific evidence to support them, that the school committee was harassing him. This does not meet the standard for opposing summary judgment. *See* Fed.R.Civ.P. 56(e) (party opposing summary judgment "may not rest upon the mere allegations or denials of [his or her] pleading"); *Anderson,* 106 S.Ct. at 2514 ("plaintiff must present affirmative evidence in

---

6. We note that Daury's case presents a slightly different situation because Daury "chose" to see the psychiatrist rather than not return to work. Daury's complaint, therefore, was for a violation of his right to privacy under the fourteenth amendment rather than a deprivation of property without due process under the fourteenth amendment. This difference is of no analytic importance.

order to defeat a properly supported motion for summary judgment").

We think that on this record the school committee acted prudently in requiring that Daury see a psychiatrist. We are impressed that the committee tried to minimize any intrusion or inconvenience that might result from the psychiatric examination. It allowed Daury the opportunity (which he ended up not having to use) of submitting a second report by the doctor of his choice if the report prepared by the psychiatrist retained by the school system was unfavorable. Moreover, the committee did not challenge the favorable report submitted by Dr. Culley, but immediately reinstated Daury upon receiving it. And, the committee did not make the contents of the report public in any way. *See Whalen*, 429 U.S. 605–06, 97 S.Ct. at 879–80.

■ We are troubled, however, by the school committee's meeting with Dr. Culley in Daury's absence to discuss the completed report. The purpose of the meeting was to clear the reputation of the school system by pressing Dr. Culley to revise the part of the report in which he concluded that the school system had a "bias" against Daury. Although we can understand the committee's desire to avoid a confrontation with Daury, we think that Daury and/or his attorney should have been given the opportunity to be present. After all, Daury was the subject of the report and it was based on information provided by him in confidence to the psychiatrist. The information discussed at the meeting could well have shredded Daury's constitutional cloak of privacy.

But this did not happen. However invasive of Daury's privacy the meeting *could have become*, in fact, no information was discussed that the school committee did not already possess. In an effort to prove to Dr. Culley that the school system was not biased against Daury, committee members gave their version of the events that prompted them to require Daury to see Dr. Culley in the first place. No person, and particularly not Dr. Culley, discussed or even mentioned any aspect of Daury's marriage, family history or other personal relationships. Daury has failed to identify any material in the record from which we could infer that the committee brought up any aspect of Daury's personal life or attempted to elicit such information from Dr. Culley. Had Daury offered specific facts suggesting this, then there might have been a genuine issue for trial. For if it were true that the school committee pressured Dr. Culley into exposing aspects of Daury's personal life merely to assuage the concern of some members that the report be modified to improve the school system's reputation, then there could have been an issue as to whether the school committee had violated Daury's right to privacy. In the absence of such supported allegations, however, the court's grant of summary judgment in favor of the school committee must be affirmed.

## IV. *Retaliation Claim*

■ Plaintiff's complaint does not contain any count stating that defendants, in requiring him to submit to a psychiatric examination, did so in retaliation for plaintiff's union activities and exercise of his right to free speech. None of the counts use the words "retaliation," "union activities," "first amendment," or "free speech." The district court noted this omission but addressed the issue, apparently because plaintiff had argued it in a memorandum to the court. Plaintiff's brief to this court suggests that the allegation was included in Count II of his complaint. His brief states: "The complaint included claims pursuant to 42 U.S.C. 1983 for deprivation of the plaintiffs liberty interest by the defendants intentional infliction of emotional distress in retaliation for the plaintiffs union activities and free speech." Appellant's Brief at 17.

We will not rewrite plaintiff's complaint to contain a count that was not included in it. This was not a *pro se* complaint. No motion was made to amend the complaint. We do not think our duty to liberally construe the pleadings gives a plaintiff the license to amend the complaint by memorandum in the district court and by brief in the appellate court. The district court was

overly generous in addressing this issue. We will not do so except to note that the district court's conclusions were correct.

*Affirmed.*