46 F.3d 1139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James Cornett COSTELLO, Plaintiff-Appellant,
v.
COLLINS ENGINEERS, INC. et al., Defendant-Appellee.
 No. 94-35116.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 6, 1994.
Decided Jan. 24, 1995.
 
 Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this appeal from a grant of summary judgment, we must determine whether the district court erred: (1) in concluding that Costello's discharge from employment did not violate public policy of the State of Washington; and (2) in finding as a matter of law that Costello had not performed work that would bring him under the Washington statute requiring that a prevailing (union) wage be paid to "laborers, workers, or mechanics, upon all public works."
 
 
 3
 I. Whether the District Court Properly Found No Violation of Washington's Public Policy
 
 
 4
 In Washington there is a public policy exception to the general rule that employment contracts indefinite in duration are terminable at will. "The essence of the public policy exception is that an employee will have 'a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy.' " Dicomes v. State, 782 P.2d 1002, 1006 (Wash.1989) (en banc) (quoting Thompson v. St. Regis Paper Co., 685 P.2d 1081, 1089 (Wash.1984) (en banc)).
 
 
 5
 In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.
 
 
 6
 Thompson v. St. Regis Paper Co., 685 P.2d 1081, 1089 (1984) (en banc) (emphasis in original). "The employee has the burden to show that the discharge contravened a clear mandate of public policy. The question of what constitutes a clear mandate of public policy is one of law." Dicomes, 782 P.2d at 1006 (citations omitted).
 
 
 7
 Costello argues that the issues surrounding his discharge in violation of public policy are matters for a jury. He also argues that there are material issues of fact as to the employer's motive for the discharge. These arguments are precluded by Dicomes, which requires the court's first step to be a determination of whether there was a violation of public policy.
 
 
 8
 The Washington Supreme Court recognizes that "the key ... is the proper definition of public policy." Id. The Court quotes "[t]he leading case recognizing the public policy exception:"
 
 
 9
 "In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively.... Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."
 
 
 10
 Id. (quoting Palmateer v. International Harvester Co., 85 Ill.2d 124, 130, 52 Ill.Dec. 13, 421 N.E.2d 876, 878-79 (1981)).
 
 
 11
 Costello argues that reimbursement of expenses should, under a liberal construction of Washington wage laws, be considered part of payment of a "wage."[1] He asks us to hold that termination of his employment in response to his demand for expense reimbursement is as much a violation of public policy as termination in response to a demand for the payment of overdue wages. See, e.g., Hume v. American Disposal Co., 880 P.2d 988, 993 (Wash.1993). We hold that the discharge does not come within Washington's narrow public policy exception as defined by its case law.
 
 
 12
 The district court did not misapply Washington law when it granted summary judgment. We affirm the district court on this issue.[2]
 
 
 13
 II. Whether the District Court Properly Granted Summary Judgment on the Prevailing Wage Claim
 
 
 14
 RCW 39.12.020 provides: "The hourly wages to be paid to laborers, workers, or mechanics, upon all public works ... shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality[.]" The district court held, as a matter of law, that Costello was not a "laborer, worker, or mechanic" within the meaning of RCW 39.12.020.
 
 
 15
 In his second cause of action, Costello alleges:
 
 
 16
 Defendant further paid plaintiff below the prevailing wage for work as a Diver/Bridge Inspector under the State of Washington contract and Plaintiff is entitled to additional wages wrongfully withheld from him. Prevailing wage for the work performed was at least $43.06 per hour. Plaintiff was underpaid by a total of at least $4706.20 during his employment with Defendant.
 
 
 17
 Those unpaid wages were wilfully withheld and Plaintiff is entitled to payment of the wages plus twice the wilfully unpaid wages as liquidated damages pursuant to RCW 49.52. plus reasonable attorney fees and costs.
 
 
 18
 ER tab 1 at paras. 2.6-2.7. Costello was employed as a junior engineer. However, Washington Administrative Code 296-127-013(3) states: "The applicable prevailing wage rates for workers employed on public works projects shall be determined by the scopes of work performed by those workers, and not by their specific job titles." (Emphasis added.)
 
 
 19
 The record includes Costello's declaration of July 27, 1992. In it, Costello states: "I had no supervisory or managerial duties and I had no duties other than those normal for a commercial diver doing bridge inspection." He declares that: (1) at no time did he do work that called upon his skills as an engineer; (2) the work he did was certified diving work that involved his credentials as a certified Bridge Inspector, and it was the same work he did before he received his engineering degree; (3) according to the contracts with the Washington State Department of Transportation, engineering qualifications were not required for the diving work; the only engineer required was a licensed professional engineer, which Costello was not; (4) Croker of Collins Engineers interviewed Costello about bridge construction, docks, and harbor projects and told him that only "occasional" diving would be necessary, when in fact "two days out of three were spent in diving activities on the 7 week Spokane river job and the remainder of the time I was answering questions about diving and the diving related projects"; (5) the majority of Costello's time was "spent directly working as a commercial diver unrelated to engineering"; (6) he did no engineering analysis of any kind and the inspection reports he prepared were of a lower level than those he did as a certified commercial diver; and (7) when he was replaced, it was with a commercial diver who did not have an engineering degree.
 
 
 20
 According to the court, "[b]y plaintiff's own testimony, the only manual labor he performed occurred on dives and occupied at most about thirty hours during two-and-one-half months on the job." (Emphasis added.) In his deposition, Costello describes his diving work to include chiseling concrete, removing concrete, doing rigging and rope work, hammering in kickers, driving rebar into the seabed, and moving rocks. But Costello also describes work done ancillary to diving but necessary to it; for example, "transporting several hundred pounds of diving gear and tools to the river bank in a truck to unload the gear from the truck and into a small boat"; driving the boat to the job site and driving it back; carrying the equipment down to the river bank and helping the divers put on the equipment; doing the daily dive logs and the daily dive reports in the office; and renting scuba equipment.
 
 
 21
 On a motion for summary judgment, "the trial court does not try issues of fact; rather, examining the entire record, it first decides the limited question of whether any factual issue exists." Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543 (9th Cir.1975). There are important questions of material fact as to the scope of Costello's work. A trier of fact must decide those issues.
 
 
 22
 AFFIRMED in part and REVERSED in part. REMANDED for trial on the issue of whether the prevailing wage should be paid. Each party shall bear its own costs on appeal. Appellant's request for attorneys' fees is denied.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Costello argues that the questions of whether reimbursement of expenses are "wages" is for a jury to determine. Once again, the first question is whether public policy has been violated, which is an issue of law. Dicomes, 782 P.2d at 1006
 
 
 [2]
 As for any other arguments Costello makes on appeal or would have us infer as to why his discharge was in violation of public policy (i.e., allegedly unsafe diving conditions, alleged violation of occupational health and safety or workers' compensation statutes, alleged lack of U.S. Longshore & Harbor Workers' Insurance), they were not pleaded in the complaint. The only facts alleged in the complaint with respect to the first issue pertain to unreimbursed expenses. We will not decide these issues. See Daury v. Smith, 842 F.2d 9, 15 (1st Cir.1988) (court of appeals "will not rewrite plaintiff's complaint to contain a count that was not included in it [by deciding issues argued but not pleaded]")