15-717-cv
*MPC Franchise, LLC v. Tarntino*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

September Term 2015

(Submitted: January 11, 2016          Decided: June 27, 2016)

No. 15-717-cv

————————————————————

MPC FRANCHISE, LLC; MP CLEARY, INC.,
*Plaintiffs-Appellees*,

-v.-

BRENT TARNTINO,
*Defendant-Appellant.*[1]

————————————————————

Before: STRAUB, LIVINGSTON, and CHIN, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*), granting summary judgment to Plaintiffs-Appellees, companies that own pizza restaurants in Elmira, New York, by the general name of "Pudgie's," on their Lanham Act claim seeking cancellation of Defendant-Appellant Brent Tarntino's ("Tarntino") federal trademark registration for the PUDGIE'S mark in connection with pizza restaurants, on the ground that Tarntino obtained the mark by fraud. Because we find no genuine issue of material fact that Tarntino fraudulently procured his

[1] The Clerk of the Court is directed to amend the caption as above.

mark, we conclude that summary judgment to Plaintiffs-Appellees was appropriate, and therefore **AFFIRM** the judgment of the district court cancelling Tarntino's mark.

JEFFREY ZUCKER, Fischer Zucker, LLC; Philadelphia, P.A., *for Plaintiffs-Appellees*.

MICHAEL H. ZHU, Michael H. Zhu, Esq. PC; New York, N.Y., *for Defendant-Appellant*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

This case involves a dispute over the mark for a chain of pizza restaurants by the general name of "Pudgie's," which started out as a small family business, but waxed and waned over the decades as the original founders passed their interests on to subsequent generations and once-convivial family relationships soured. Defendant Brent Tarntino ("Tarntino") appeals from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*), granting summary judgment to Plaintiffs-Appellees MPC Franchise, LLC ("MPC Franchise") and MP Cleary, Inc. ("MP Cleary") (collectively, "Plaintiffs") — entities owned principally by Tarntino's cousins, David Cleary and Robert Cleary — on Plaintiffs' claim that Tarntino fraudulently obtained his federal trademark registration for the PUDGIE'S mark in connection with restaurants that principally serve pizza, pasta, and submarine sandwiches.

2

# I. Background

*A. Facts*

The dispute over the PUDGIE'S mark traces back more than fifty years to the town of Elmira, New York, just north of the Pennsylvania border. In 1963, three brothers — Charles "Pudgie" Cleary, Francis Cleary, and Michael Cleary, Sr. — opened up a pizza parlor on the north side of Elmira and named it Pudgie's, after one of the three brothers. The following year, the three brothers opened a second Pudgie's location, this time on the south side of Elmira. The two locations came to be known as "Pudgie's Northside" and "Pudgie's Southside," respectively. Pudgie's Northside and Pudgie's Southside experienced continued success, prompting the three brothers in 1972 to form the Pudgie's Pizza Franchising Corporation ("PPFC") for the purpose of offering and selling franchises for additional Pudgie's pizza parlor locations. PPFC then registered the PUDGIE'S mark with the United States Patent and Trademark Office ("PTO"). *See* PUDGIE'S, Registration No. 1,102,421 (Sept. 12, 1978).

The three brothers had a sister, Bernadette Tarntino, who, in 1973, purchased a franchise from PPFC and opened a Pudgie's location in Horseheads, New York, located several miles north of Elmira. The location came to be known

3

as "Pudgie's Horseheads." To manage Pudgie's Horseheads, Bernadette Tarntino formed a corporation named Pudgie's Pizza Corporation — Horseheads ("PPCH").

In 1985, the PTO cancelled PPFC's federal trademark registration of the PUDGIE'S mark after PPFC failed to file a required declaration. For several years, however, PPFC continued to operate its franchises as before.

In 1990, Michael Cleary, Sr. died owning 50% of the stock in PPFC, as well as all of MP Cleary, which in turn owned Pudgie's Southside and another Pudgie's location in Pennsylvania. These interests passed on to his sons, David and Robert Cleary, as well as his wife, Rosa Cleary. PPFC began to deteriorate, however, sometime in the early 1990s. On September 29, 1993, PPFC officially dissolved, and another franchisor did not immediately take its place. As a result, the restaurants that were operating as franchisees of PPFC just prior to PPFC's dissolution became independently run operations.

The chain of Pudgie's pizza restaurants that got their start in Elmira, New York, was not the only chain of restaurants in the nation to use the name "Pudgie's" in connection with restaurants and food services. In the New York City metropolitan area, there was a chain of restaurants principally serving fried

chicken that also went by the name of "Pudgie's" (or, more specifically, "Pudgie's Famous Chicken"). In 2002, Arthur Treacher's, Inc. ("Arthur Treacher's"), the entity that operated the Pudgie's Famous Chicken restaurants at the time, obtained a federal trademark registration for the "PUDGIE'S" mark in connection with "[r]estaurant[s] and carry[-]out restaurant services." PUDGIE'S, Registration No. 2,565,298 (April 30, 2002). Arthur Treacher's later assigned its interest in the PUDGIE'S mark to PAT Franchise Systems, Inc. ("PAT"). MP Cleary learned of PAT's mark in 2004, when it looked into obtaining a new federal trademark registration for the PUDGIE'S mark. Shortly thereafter, MP Cleary and PAT reached an agreement regarding the mark, pursuant to which PAT granted MP Cleary a "non-exclusive, perpetual and transferable license to use and display the PUDGIE'S mark . . . in connection with MP Cleary's existing and future restaurants," while PAT "retain[ed] the right to use the [PUDGIE'S mark] solely in connection with its 'Pudgie's Famous Chicken' business." J.A. 196. PAT then assigned its interest in the PUDGIE'S mark to TruFoods, LLC ("TruFoods") in 2008. In 2009, David and Robert Cleary formed MPC Franchise to begin franchising Pudgie's pizza restaurants.

5

Meanwhile, Bernadette Tarntino died in 2007, leaving a one-third stake in PPCH to each of her three children, one of whom is Defendant-Appellant Tarntino. On July 12, 2010, Tarntino filed an application with the PTO seeking a federal trademark registration for a mark "consist[ing] of the word 'Pudgie's' displayed in a custom font," for use in connection with "[p]izza parlors" and "[r]estaurant services featuring pizza, pasta, and subs." J.A. 526–27 (emphasis omitted). Tarntino certified in his application that "[t]o the best of his[] knowledge and belief[,] no other person, firm, corporation, or association has the right to use the [PUDGIE'S] mark," either in "identical form" or "in such near resemblance . . . as to be likely . . . to cause confusion, or to cause mistake, or to deceive."[2] J.A. 531. Because applicants for federal trademark registrations generally must include a "specimen" representative of the mark's actual use in the marketplace, *see* 37 C.F.R. § 2.56, Tarntino also submitted with his application a photograph of a Pudgie's pizza box that he obtained from Pudgie's

---

[2] Specifically, Tarntino attested that "[t]o the best of his[] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." J.A. 531; *see also* 15 U.S.C. § 1051(a)(3) (listing the general verification requirements for a trademark application based on use in commerce); 37 C.F.R. § 2.33(b)(1) (setting forth the oath enshrining the statutory requirements).

Horseheads, where he worked at the time. Displayed beneath the PUDGIE'S mark on the pizza box were the words "® Pudgie's Pizza Franchising Corporation 1972." J.A. 378; J.A. 602, ¶ 54.

On February 22, 2011, the PTO issued Tarntino a federal trademark registration for the PUDGIE'S mark. *See* PUDGIE'S, Registration No. 3,922,745 (Feb. 22, 2011). By letters dated March 30, 2011, Tarntino informed all owners of Pudgie's pizza establishments, including MPC Franchise, that, among other things: he was the registered owner of the PUDGIE'S mark, as "used in the operation of food establishments"; the mark entitled him to "nationwide priority with respect to use of the 'Pudgie's' logo in the operation of pizza parlors and the provision of restaurant services featuring pizza, pasta, and submarine sandwiches"; and Pudgie's pizza establishments could not use the mark beyond the geographic regions they currently served without first obtaining Tarntino's written permission. J.A. 549. Failure to obtain such permission, Tarntino warned, could prompt him to file a trademark-infringement lawsuit. Following this letter, Tarntino also called at least one Pudgie's pizza establishment reiterating his rights in the PUDGIE'S mark, and touted his sole ownership of the PUDGIE'S mark on Facebook.

7

*B. Procedural History*

On June 21, 2011, Plaintiffs filed suit against Tarntino in the United States District Court for the Western District of New York, alleging various violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Relevant here is Plaintiffs' second cause of action, seeking cancellation of Tarntino's mark pursuant to 15 U.S.C. § 1064(3), principally on the grounds that Tarntino fraudulently obtained the mark. In response, Tarntino, along with PPCH, counterclaimed, alleging, *inter alia*, federal trademark infringement, common-law trademark infringement, and federal unfair competition.

After Tarntino moved for summary judgment, Plaintiffs cross-moved for partial summary judgment, including with regard to their claim seeking cancellation of Tarntino's mark due to fraudulent procurement. In a ruling dated May 13, 2014, the district court (Siragusa, *J.*) granted Plaintiffs' motion for partial summary judgment insofar as it relied on fraud as a basis for cancellation of Tarntino's mark, finding that the record clearly demonstrated, *inter alia*, that Tarntino "knew that Plaintiffs were already franchising pizzerias, using the very same mark that he was attempting to register for that same purpose." *MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 480–81 (W.D.N.Y. 2014). The

district court canceled Tarntino's registration, dismissed Tarntino and PPCH's counterclaim for federal trademark infringement, granted Tarntino and PPCH's motion for summary judgment on Plaintiffs' federal unfair-competition claim, and denied Tarntino and PPCH's motion for summary judgment on several other counterclaims. *See id.* at 484–86. Tarntino and PPCH thereafter voluntarily dismissed their remaining counterclaims. This appeal followed.

## II. Discussion

"We . . . review *de novo* a district court's grant of summary judgment, . . . drawing all factual inferences in favor of the non-moving party." *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 192 (2d Cir. 2014). We affirm when "we are able to conclude . . . that there is no genuine issue of dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ne. Research, LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 207 (2d Cir. 2013) (alteration in original) (quoting *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011)).

*      *      *

On appeal, Tarntino principally contests the district court's grant of summary judgment to Plaintiffs on their claim seeking cancellation of Tarntino's

PUDGIE'S mark on the grounds that Tarntino procured the mark by fraud. Under the Lanham Act, "any person who believes that he is or will be damaged" may file a "petition to cancel a registration of a mark," for which "registration was obtained fraudulently." 15 U.S.C. § 1064(3); *see also* 15 U.S.C. § 1119. "Fraud in procuring a trademark registration . . . occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed Cir. 1986)); *see also Orient Express Trading Co. v. Federated Dep't. Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (specifying that a plaintiff seeking cancellation of a trademark on the basis of fraudulent procurement must point to a "knowing misstatement . . . with respect to a material fact" (emphasis omitted)). "A party seeking cancellation of a registered trademark on grounds of fraud must demonstrate the alleged fraud by 'clear and convincing evidence.'" *Orient Express*, 842 F.2d at 653 (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir. 1983)).

Here, Tarntino applied for the PUDGIE'S mark in his individual capacity and signed an oath attesting, *inter alia*, that: (1) he believed himself to be "the owner of the . . . mark"; and (2) "[t]o the best of his[] knowledge and belief[,] no

10

other person, firm, corporation, or association has the right to use the [Pudgie's] mark," either in "identical form" or "in such near resemblance . . . as to be likely . . . to cause confusion, or to cause mistake, or to deceive." J.A. 531. Tarntino does not dispute the materiality of these representations, but argues that he lacked fraudulent intent with respect to them. Specifically, Tarntino argues that the Federal Circuit's 2009 decision in *Bose* makes clear that the scienter standard for fraud on the PTO is met only when an applicant *actually knew* that material statements in the trademark application were false, and that it is not enough that the applicant *should have known* about such falsity. Under that heightened standard, Tarntino urges, Plaintiffs failed to show by clear and convincing evidence that he had sufficient scienter with respect to the above statements. According to Tarntino, the district court, in concluding otherwise, misapplied the scienter standard and effectively held Tarntino liable for misstatements in his trademark application simply because he *should have known* that they were false. We agree with Tarntino about the degree of scienter required for a plaintiff successfully to allege fraudulent trademark procurement, but nevertheless find no genuine issue of material fact that Tarntino fraudulently obtained his mark.[3]

---

[3] Tarntino also disputes Plaintiffs' contention that his statement in his

11

In *Bose*, the Federal Circuit rejected the federal Trademark Trial and Appeals Board's ("TTAB") scienter standard for claims alleging fraudulent trademark procurement, under which "[a] trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its [trademark application] which it knows or *should know* to be false or misleading." 580 F.3d at 1244 (first alteration in original) (quoting *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205, 1209 (T.T.A.B. 2003)). As the Federal Circuit clarified, "a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant *knowingly* makes a false, material representation with the intent to deceive the PTO." *Bose*, 580 F.3d at 1245 (emphasis added). We agree with the Federal Circuit in *Bose* that "[m]ere negligence is not sufficient to infer fraud" on the PTO. *See id.* at 1244 (alteration in original) (quoting *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1582 (Fed. Cir. 1991)). That is, to succeed on a claim that a trademark holder procured the mark by fraud, a plaintiff cannot merely

application that the date of the mark's first use was in 1980 was fraudulent. Notwithstanding the fact that in 1980, Tarntino was, by his own admission, seven years old and "not directly using the mark," J.A. 104, Tarntino argues that his statement of first use was not material. We need not address Tarntino's statement of first use here, as we conclude on other grounds that Plaintiffs established by clear and convincing evidence that Tarntino fraudulently obtained his mark.

show that the trademark holder "should have known" that the application contained false statements of material fact. *See id.*

Tarntino asserts that *Bose* reflects a paradigm shift as to the scienter required to show fraudulent trademark procurement, which raises the question whether this Circuit's case law is consistent with *Bose*. We conclude that it is. To be sure, we stated in *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254 (2d Cir. 2011) — in the routine course of reciting the general elements of a claim alleging fraudulent trademark procurement — that one of the requirements of such a claim was that "[t]he person making the representation knew *or should have known* that the representation was false ('scienter')." *Id.* at 270 (emphasis added) (quoting 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:61 (4th ed.), Westlaw (database updated Dec. 2009)).[4] But any suggestion in *Patsy's* that the scienter element is satisfied when a plaintiff shows

[4] At the time we heard argument in *Patsy's*, McCarthy's treatise still reflected the pre-*Bose* TTAB standard, and had not yet been updated to take into account the Federal Circuit's decision in *Bose*. *See* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:61 (4th ed.), Westlaw (database updated Dec. 2009) ("The person making the representation knew or should have known that the representation was false ('scienter')[.]"). McCarthy's treatise now states that scienter requires that "[t]he person making the representation *knew* that the representation was false." 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:61 (4th ed.), Westlaw (database updated Mar. 2016).

merely that an applicant "should have known" the falsity of a representation is dicta. After the district court in *Patsy's* canceled a mark held by one of the parties, the issue on appeal, as framed by the parties, was whether there was sufficient evidence that the mark holder "*knew* that [a certain statement about the duration and continuity of its use of the mark] was a misrepresentation" at the time the mark holder submitted its allegedly fraudulent application. *Id.* at 271 (emphasis added). We concluded that there was ample evidence to support the jury's conclusion that the mark holder "had to have known" that the statement was false, *id.*, not simply that it "should have known."

*Patsy's* thus did not alter the law of this Court, stated in prior cases such as *Orient Express*, that for a plaintiff to show that a trademark holder fraudulently obtained her trademark, the "allegedly fraudulent statements [in the application] may not be the product of mere error or inadvertence." *Orient Express*, 842 F.2d at 653. Rather, they must be "knowing misstatement[s]" of material fact that "indicate a 'deliberate attempt to mislead the [PTO].'" *Id.* (second alteration in original) (quoting *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982)). This standard is consistent with *Bose*, and with all other Circuits to have considered the question post-*Bose*. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738

14

F.3d 1085, 1098 (9th Cir. 2013) (concluding that a counterclaim defendant seeking cancellation of plaintiff's mark did not satisfy the scienter standard because the defendant "put forth no evidence suggesting that the false statement [in the plaintiff's application] was anything other than the result of a simple mistake," and "adduced no evidence that [the plaintiff] *knew* of the misstatement . . . or intended to defraud the [PTO]" (emphasis added)); *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order*, 702 F.3d 1279, 1289 (11th Cir. 2012) (stating that "[a]n applicant commits fraud when he '*knowingly* makes false, material representations of fact in connection with an application for a registered mark'" and requiring a "purpose or intent to deceive the PTO in the application for the mark" (emphasis added) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008)); *Fair Isaac Corp. v. Experian Info. Solutions*, 650 F.3d 1139, 1148 (8th Cir. 2011) ("Fraud in procuring a trademark registration or renewal occurs when an applicant *knowingly* makes false, material representations of fact in connection with his application." (emphasis added) (quoting *Bose*, 580 F.3d at 1243)).[5]

_____

[5] Because we conclude that there is no genuine issue of material fact as to

Nevertheless, while we agree with Tarntino that it is insufficient for a claim of fraudulent procurement of a mark that the applicant "should have known" about the falsity of a representation in the application, Tarntino's arguments about the requisite degree of scienter do not aid him. As an initial matter, it is plain that the district court did not rely on an incorrect scienter standard in determining that Tarntino fraudulently obtained his mark. To be sure, the district court quoted *Patsy's* for the general elements of a claim for mark cancellation based on fraudulent procurement, and thus included the language from *Patsy's* that the applicant "should have known" the falsity of alleged misrepresentations. *MPC Franchise*, 19 F. Supp. 3d at 478 (quoting *Patsy's*, 658 F.3d at 270). But the district court unequivocally found that no material issue of fact existed as to Tarntino's *actual knowledge* of falsity with respect to the

whether Tarntino possessed actual knowledge with respect to false representations of material fact in his application, we need not address whether a somewhat less stringent standard than actual knowledge — such as "reckless disregard," *see Bose*, 580 F.3d at 1246 n.2, or the "willful blindness" standard that applies to claims of induced patent infringement, *see Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–68 (2011) — may satisfy the scienter requirement for fraudulent procurement of a mark, *cf. Bose*, 580 F.3d at 1246 n.2 ("The PTO argues that . . . making a submission to the PTO with reckless disregard of its truth or falsity satisfies the intent to deceive requirement. We need not resolve this issue here . . . . [because] even if we were to assume that reckless disregard qualifies, there is no basis for finding [the applicant's] conduct reckless.").

16

misrepresentations alleged by Plaintiffs. *See, e.g.*, *id.* at 480–81 ("Tarntino . . . *knew* that Plaintiffs were already franchising pizzerias, using the very same mark that he was attempting to register for that same purpose." (emphasis added)); *see also id.* at 480 ("Tarntino was *well aware* that he was merely a one-third owner of the [corporation that in turn owned Pudgie's Horseheads]. Tarntino's misstatement of ownership was not a mistake. . . . Tarntino was not attempting to register the mark on behalf of the corporation in which he was a part owner; he registered it for himself." (emphasis added)).

Indeed, it is beyond question that Tarntino possessed the requisite degree of scienter, even under the more stringent standard for which Tarntino advocates. Even though Tarntino applied individually and personally for the mark, Tarntino admits — as he must — "that [he] did not individually or personally use the [PUDGIE'S m]ark" at any point in time. Appellant's Br. 42.

Further, there is abundant evidence that Tarntino knew that others had rights to use the mark that were at least equal, if not clearly superior, to his own. Most importantly, Tarntino was well aware of multiple other Pudgie's locations that were using the mark in the precise same capacity in which he applied for the mark, including the very first Pudgie's locations, Pudgie's Northside and

17

Pudgie's Southside, located mere miles away from Pudgie's Horseheads. Unsurprisingly, Tarntino was familiar with the beginnings of the original Pudgie's locations, which his uncles (one of whom Tarntino described as "the godfather . . . of the family") started, and which grew into a family business involving many of Tarntino's close relatives. J.A. 384. In a deposition, Tarntino admitted that he knew that when his mother opened Pudgie's Horseheads, she operated the restaurant as a franchisee. He even had a copy of a franchise agreement between his mother and PPFC defining, *inter alia*, the scope of his mother's rights to use the PUDGIE'S mark.

The district court correctly concluded that no material issue of fact existed as to whether Tarntino knowingly made false, material representations in his application. Indeed, the specimen that he included with his application exhibited that the PUDGIE'S mark originally came from PPFC, as it was an image of a pizza box displaying the words "® Pudgie's Pizza Franchising Corporation 1972" beneath the PUDGIE'S mark. J.A. 378. And when asked in a deposition whether these words "signif[ied] to [Tarntino] that someone other than [him] owned [the PUDGIE'S mark]," Tarntino conceded that the words

18

indicated to him that someone else "ha[d] the rights to" the mark "[a]long with [him]." *See id.*

Given these facts, it cannot be gainsaid that Tarntino knew fully well that other Pudgie's locations used the PUDGIE'S mark even before Pudgie's Horseheads existed, in the same general area as Pudgie's Horseheads and for use in connection with pizza restaurants. Thus, even setting aside the fact that Tarntino applied for the PUDGIE'S mark in his individual capacity despite only having acquired in 2007 a one-third share in the corporation that owned Pudgie's Horseheads, Tarntino could not have believed earnestly that "no other person, firm, corporation, or association ha[d] the right to use the [PUDGIE'S] mark," either in "identical form" or "in such near resemblance . . . as to be likely . . . to cause confusion, or to cause mistake, or to deceive." J.A. 531. No genuine issue of material fact exists as to whether Tarntino knew that other entities had rights to use the mark in the very manner in which he sought to use the mark, and whether he intended to mislead the PTO by attesting otherwise in his trademark application.[6] Accordingly, we **AFFIRM** the district court's grant of summary judgment to Plaintiffs on their claim seeking cancellation of Tarntino's mark.

---

[6] Given that Tarntino unquestionably knew of other Pudgie's pizza restaurants that were using the PUDGIE'S mark in the same capacity as Pudgie's

19

Horseheads, we need not consider whether Tarntino's knowledge of TruFoods's mark, which Tarntino alleges could be used only in connection with restaurants serving chicken, might also satisfy the scienter element of Plaintiffs' claim.