**Lawrence STEWART, Plaintiff-Appellee,**

v.

**Frank C. PEARCE et al., Defendants-Appellants.**

**No. 71–1875.**

United States Court of Appeals, Ninth Circuit.

Sept. 17, 1973.

---

Keith C. Sorenson, Dist. Atty., James M. Parmelee, Chief Civ. Deputy Dist. Atty., Redwood City, Cal., for defendants-appellants.

Dennis J. Roberts, of Kennedy & Rhine, San Francisco, Cal., for plaintiff-appellee.

Before TRASK and CHOY, Circuit Judges, and TAYLOR,* District Judge.

CHOY, Circuit Judge:

This is an appeal from a district court order granting Stewart a preliminary injunction. The injunction mandates appellants Pearce and other officers and Governing Board members of San Mateo College (the College) to reinstate Stewart as an instructor in English because his procedural due process rights under the Fourteenth Amendment were violated. We affirm.

Since June of 1968, Stewart has been employed by the College as an instructor in English, and was under contract[1] with the College for the 1970–71 academic year.

During the 1969–70 school year Stewart participated in several campus anti-war protest activities which were critical of the Vietnam war, and in one instance particularly disparaging of the College administration.[2] On July 28,

---

* The Honorable Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation.

1. Stewart's employment contract is similar to the one described in Board of Regents v. Roth, 408 U.S. 564 at 566 n. 1, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1970). His formal notice of appointment contained only scant information as to starting date, salary, assignment to the English division and teaching assignment for fifteen units in both fall and spring. There is no further written evidence of a contract, but the trial court's findings clearly refer to the existence of one.

2. The activities included distributing peace literature, carrying signs, and asking students to boycott classes on November 15, 1969, the Vietnam war moratorium day. Also, on May 6, 1970, immediately after the Kent State shootings, Stewart was one of many speakers before a gathering of students in the student union cafeteria. There, in an emotional speech he sharply criticized both the war and the College president. Finally, on May 11, Stewart participated in a "guerilla theater" vignette in which he portrayed a symbolic authority figure who ends his performance by burning a copy of Roberts' Rules of Order.

1970 pursuant to a state statute,[3] Pearce, Dean of Instruction, by letter ordered Stewart to undergo a psychiatric examination to determine his mental competency to perform his duties. Stewart, on vacation at the time, failed to receive that letter, but did receive a similar letter from Ewigleben, the president of the College, dated August 5, 1970. On advice of counsel, and claiming the College administrators' order was in bad faith, Stewart refused to submit to the psychiatric examination. No reason for ordering the examination was given by appellants until September 17, 1970, when it was admitted that the 1969–70 activities were the cause.

Upon Stewart's refusing to submit to the psychiatric examination, Pearce on September 2, ordered him removed from his classroom teaching duties and reassigned to assisting the librarian without reduction in compensation. Stewart exhausted the College grievance procedures, which resulted in the Governing Council of the Faculty Senate recommending that Stewart be returned to his teaching duties. The College, however, did not heed this recommendation and told Stewart that his library assignment was to continue. Having worked in the library for six weeks in the hope of being returned to teaching, Stewart stopped reporting to the library. On November 25, the College initiated action to dismiss him pursuant to California Education Code §§ 13403–08 for refusal to perform regular assignments without reasonable cause. The mental

incompetence proceedings were then dropped.

Stewart thereupon filed this action in the district court for a declaratory judgment, a temporary restraining order, and damages under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343. In granting the preliminary injunction requiring Stewart's immediate reinstatement to his teaching duties, the district court held requisite the minimal due process safeguards of a statement of reasons, notice of hearing, and a hearing in this situation where *both* the unexplained psychiatric examination order and removal from the classroom were involved.

Appellants make two contentions challenging the district court's order. First, they contend that Stewart had adequate remedies at law available in the state courts which should have been pursued before a federal action was brought. This argument is foreclosed by Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L.Ed.2d 492 (1960) where the Court held that failure to exhaust state court remedies does not defeat a claim under the Civil Rights Act since "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id.* at 183, 81 S. Ct. at 482. See also Whitner v. Davis, 410 F.2d 24, 28 (9th Cir. 1969).

Appellant's second contention is that no due process rights attach when an employee is assigned to other duties—in

3. California Education Code § 13411 provided:

No employee shall be suspended on a charge of incompetency due to mental disability until the governing board has appointed an independent recognized psychiatrist to examine him, nor unless the psychiatrist reports in writing to the governing board that the employee is, in his opinion, suffering from mental disability of such character as to render him incompetent to perform his duties. The employee against whom the charge is filed shall submit to the examination, but shall be entitled to be represented thereat by a

psychiatrist or physician of his own choice, and the report of the psychiatrist or physician selected by him shall be filed with the governing board at the request of the employee. The employee shall, upon request, and before action by the board, be furnished with a complete copy of all reports made by the psychiatrist appointed by the governing board.

The section has since been amended to provide for a written statement of facts and an opportunity to appear within ten days to explain or refute the charges. See California Education Code § 13411(b) (West Supp. 1973).

this case, to work in the library; that the transfer of assignment does not involve the deprivation of any interest protected by the due process clause. However, this overlooks the unexplained psychiatric examination order. Since the removal and transfer from the classroom were the consequence of the refusal to submit to that order, the validity of the order must be determined.

 We hold the order was constitutionally invalid absent the prior giving to Stewart of reasons, notice of a hearing, and a proper hearing.[4] A hearing is required when any charge is made that "might seriously damage [a person's] standing and associations in his community . . . . For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) citing Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

The order by the College to report for a psychiatric examination implied that there existed both reasonable grounds for the order and mental unfitness for the job. Moreover, the order created a "stigma, an official branding" of Stewart. Wisconsin v. Constantineau, *supra* at 437, 91 S.Ct. 507. "Only when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented." *Id. Cf.* Jablon v. Trustees of California State Colleges, 482 F.2d 997 (9th Cir., 1973).

Stewart raises several additional arguments for affirmance based on the alleged deprivation of other constitutional rights. Since we hold that his right to due process has been violated, we need not reach these further issues.

Affirmed.

4. Stewart's working in the library after being ordered to report there pending the grievance proceedings did not constitute a waiver of his right to a proper hearing. Waiver of constitutional rights is not lightly inferred and every reasonable presumption against such a waiver is indulged. Fuentes v. Shevin, 407 U.S. 67, 94–95, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).