Wesley **FLYNN**, Plaintiff–Appellant,

v.

David G. **SANDAHL**, Defendant–Appellee.

No. 93–3886.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1994.

Decided June 16, 1995.

Teresa Machicao–Hopkins (argued), James E. Hopkins, Machicao & Associates, Marion, IL, for Wesley Flynn.

Jacqueline M. Zydeck, Office of Atty. Gen., Civ. Appeals Div., Chicago, IL (argued), for David G. Sandahl.

Before RIPPLE and MANION, Circuit Judges, and SKINNER, District Judge.*

MANION, Circuit Judge.

The plaintiff, Wesley Flynn, brought this suit for injunctive relief against the defendant, claiming that the defendant's request that he submit to a psychiatric examination violated his constitutional rights to privacy, procedural due process as well as state law. The court initially granted Flynn's request for preliminary injunctive relief, but later granted summary judgment in favor of the defendant based on qualified immunity. Flynn appeals from this judgment, which we affirm on the alternate ground that the undisputed facts of this case demonstrate that Flynn's claims lack merit.

## I.

At all times relevant to this suit, Flynn was a correctional officer at the Shawnee Correctional Center located in Vienna, Illinois. The parties agree that Flynn was a civil servant under Illinois law, such that he could not be discharged except for cause. *See* 20 ILCS 415/11 (1993).

The dispute in this case arose when several of Flynn's coworkers complained to prison administration officials that Flynn had threatened them with physical harm. Pursuant to an administrative directive issued by the Illinois Department of Corrections, the Warden at Shawnee, David Sandahl, determined that Flynn should undergo a psychiatric examination. Prior to ordering the examination, Sandahl directed Major Waters, another correctional officer at Shawnee, to arrange an informal meeting during which Sandahl could discuss with Flynn the grounds for the examination. Major Waters telephoned Flynn asking that he attend a meet-

* Hon. Walter J. Skinner, District of Massachusetts, sitting by designation.

ing with Sandahl, but Flynn refused. Sandahl next personally telephoned Flynn to discuss the situation. During this conversation Flynn informed Sandahl that it was his understanding that Sandahl intended to request Flynn to submit to a psychiatric examination. Sandahl confirmed Flynn's understanding; he also informed him that the complaints against him formed the basis for the decision to request the examination. Flynn advised Sandahl that he would not attend the examination unless ordered to do so, which Sandahl did over the phone and later by letter. Flynn refused this and a subsequent order. As a result, Flynn was charged with insubordination and ordered to attend a hearing before an arbitrator at which it would be determined whether Flynn should be discharged for insubordination.

Flynn responded by filing an action against Sandahl under 42 U.S.C. § 1983. In his complaint, Flynn alleged that Sandahl's orders directing him to submit to a psychiatric examination violated his rights to privacy and procedural due process. As relief, Flynn requested a TRO and a preliminary injunction ordering Sandahl to show good cause for requiring the psychiatric exam. Flynn also requested attorney's fees and costs and "other such relief as this court may deem just and proper." Following a hearing on Flynn's TRO application, the district court denied Flynn's request, but granted him leave to reapply upon receipt of notice of suspension or discharge for his refusal to take the psychiatric examination.

Shortly thereafter, the Shawnee Employee Review Board held a hearing on Sandahl's charge that Flynn had been insubordinate in refusing to take the psychiatric exam. Following the hearing, at which Flynn and several correctional officers testified, the employee review officer determined that Flynn had been insubordinate and recommended that he be suspended pending discharge. Sandahl accepted the review officer's findings and directed that Flynn be suspended pending discharge.

Upon receipt of this notice of discharge, Flynn filed a second application for a TRO. This application was granted and the matter was set for a hearing on Flynn's request for a preliminary injunction. Prior to the hearing, Flynn filed a motion for summary judgment, requesting that Sandahl be permanently enjoined from requiring him to undergo a psychiatric examination unless good cause could be shown at a hearing in which Flynn would be allowed to confront witnesses and present evidence in opposition to the examination. However, in his memorandum attached to his motion, Flynn did not argue that he was denied due process; rather, he argued exclusively that Sandahl's order requiring him to submit to a psychiatric examination violated his constitutional right to privacy. At the preliminary injunction hearing, Flynn repeated that he was relying exclusively upon the theory that Sandahl had violated his right to privacy.

The district court granted Flynn's request for a preliminary injunction. While it acknowledged that Flynn had couched his arguments at the hearing in terms of a right to privacy, the district court never ruled on the merits of this claim. Instead, it granted Flynn relief based on what it perceived as a stronger claim that Sandahl had violated Flynn's due process rights by not providing him a hearing during which he could challenge the propriety of the psychiatric examination. The court therefore entered an order prohibiting Sandahl from ordering Flynn to undergo the examination or discharging him for refusing to take the examination until the court determined the merits of Flynn's claim or rescinded its order.

Following the district court's order, Sandahl filed a cross-motion for summary judgment. In his motion, Sandahl argued that Flynn was not denied due process. As to Flynn's claim that the order to take the psychiatric examination violated his right to privacy, Sandahl submitted that he was entitled to qualified immunity because at the time he ordered the examination the law was not clear that Flynn had a right to refuse it. Flynn never filed a response to Sandahl's motion.

The district court denied Flynn's motion for summary judgment and granted Sandahl's. The court did not refer to the due process theory it relied upon as its basis for granting the preliminary injunction. In-

stead, the court found that at the time Sandahl ordered Flynn to take the examination, there was no clearly established constitutional right to refuse to obey such an order, and on that basis concluded that Sandahl was entitled to the defense of qualified immunity. The court therefore entered judgment in favor of Sandahl and against Flynn, and dissolved its previous preliminary injunction.

Flynn filed a timely notice of appeal. However, he did not request a stay of the district court's dissolution of the preliminary injunction. Prior to briefing and argument before this panel, Flynn was discharged from the Shawnee Correctional Center based on his acts of insubordination in refusing to submit to the examination.[1] On appeal, Flynn requests this court to reverse the district court's determination that Sandahl was entitled to qualified immunity, and remand for further proceedings on the merits of his complaint.

## II.

■ Before reaching the merits, we must first determine whether we have jurisdiction to hear Flynn's appeal. As mentioned above, Flynn was discharged pending his appeal. Because Flynn's complaint only sought injunctive relief, and since he is no longer employed at the Shawnee Correctional Center, Sandahl submits that Flynn is no longer subject to the possibility of being ordered to take the psychiatric examination, meaning that we must dismiss his appeal as moot.

■ The proper test for mootness on appeal is not whether we may return the parties to the status quo ante, but rather, whether it is still possible to "fashion *some* form of meaningful relief" to the appellant in the event he prevails on the merits. *Church of Scientology v. United States,* — U.S. —, —, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1993) (emphasis in original). Under that standard Flynn's appeal is not moot. One of Flynn's claims on appeal is that Sandahl deprived him of procedural due process when he ordered Flynn to submit to a psychiatric examination without first offering him a hearing in which he could challenge the propriety of the order. Were we to agree with Flynn that this constituted a denial of due process (which we do not, as we shall soon see) it would still be possible for us to grant Flynn relief. Although it is too late to prevent the initial insubordination proceedings against Flynn, it would still be possible for us to order that he be reinstated pending a hearing during which he could challenge the grounds for the psychiatric examination. *See, e.g., Dwyer v. Regan,* 777 F.2d 825, 836 (2d Cir.1985) (noting that one possible remedy for a pretermination denial of due process is to order reinstatement pending a hearing); *Jackson v. Stinchcomb,* 635 F.2d 462, 469 (5th Cir.1981) (same). And since such an order would be for prospective injunctive relief, it would not be barred by the Eleventh Amendment, *see Dwyer,* 777 F.2d at 836, which comes into play here because Flynn sued Sandahl in his official capacity. Thus, some form of relief is available, which is sufficient, according to *Church of Scientology,* to prevent Flynn's appeal from being dismissed as moot.

■ Nor is our conclusion altered by the fact that Flynn did not seek a stay of the district court's judgment pending his appeal. A motion to stay under Fed.R.Civ.P. 62 is not a jurisdictional prerequisite comparable to timely filing a notice of appeal. *See In re UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994); 9 Moore's *Federal Practice,* ¶ 208.03 at 8–9 to 8–10 (2d ed. 1994). The purpose of a stay is simply to preserve the status quo. In the event a stay is not sought, the prevailing party is free to take advantage of the district court's judgment. And as long as the prevailing party's actions pending the appeal do not render it *impossible* to fashion some form of relief to the appellant, then there remains a case or controversy within the scope of Article III. The key is "impossible"; as long as some form of relief is possible, then according to *Church of Scientology* we still have the *power* to act,

---

1. Flynn was given a hearing before the Illinois Civil Service Commission to determine whether his discharge was for good cause. The hearing officer determined that it was. Flynn does not challenge this determination.

the essence of jurisdiction. *See, e.g., SEC v. Wozniak*, 33 F.3d 13, 15 (7th Cir.1994) ("jurisdiction is power to decide"). There is nothing in the record before us indicating that it is impossible to provide some form of relief to Flynn. Nor has Sandahl claimed that Flynn's failure to seek a stay has caused Sandahl to so change his position as to render it inequitable, as a prudential matter, to grant Flynn relief. *Cf. In re UNR Indus., Inc.*, 20 F.3d at 769 (pointing out the distinction between an "inability" and an "unwillingness" to alter a district court's judgment, and observing that the latter involves matters of prudence, not mootness). Therefore, we have jurisdiction over this appeal, and proceed to the merits.

■ We come first to Flynn's claim that Sandahl's failure to provide him a hearing in which he could challenge the necessity of the psychiatric examination deprived him of due process. Before addressing the merits of this contention, we briefly address Sandahl's assertion that Flynn has waived it because he raised it neither in his own motion for summary judgment, nor in response to that portion of Sandahl's motion in which he maintained that Flynn was not deprived of due process. Sandahl is mistaken. To begin with, we know of no cases, nor has Sandahl directed us to any, stating that a plaintiff must raise every legal issue in his motion for summary judgment. The purpose of a summary judgment motion is not to preserve legal arguments for appeal; rather, it is to eliminate useless trials on undisputed issues of fact. *See* 6 Moore's *Federal Practice* ¶ 56.04[1] at 56–60 to 56–61 (2d ed. 1994). Second, the only effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial; it does not constitute a waiver by the non-moving party of all legal arguments based

upon those undisputed facts. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994); *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir.1993).[2] In other words, the fact that Flynn chose not to respond to Sandahl's cross-motion simply means that Flynn was willing to rely on the undisputed facts as set out in support of Sandahl's motion. And if, as a matter of law, those undisputed facts support Flynn's claim that he was deprived of due process, we could reverse the district court's judgment and award summary judgment to Flynn. *See Glass*, 2 F.3d at 739.[3]

■ Having said this, the undisputed facts of this case demonstrate that this claim lacks merit. Due process provides that an employee with a property interest in his job is entitled to some form of notice and hearing prior to termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). However, that employee cannot claim lack of due process when his employer offered him such a pretermination hearing and he refused to attend. *See Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 414 (7th Cir.1994). Although Flynn claims that he was never informed of the reason for the psychiatric examination nor provided an opportunity to respond, the record demonstrates otherwise. During his telephone conversation with Flynn, Sandahl informed him that the complaints from Flynn's coworkers formed the basis for his decision to request the examination. The record further demonstrates that Sandahl desired that Flynn meet with him and discuss these complaints, but Flynn refused. Because Flynn has pointed us to nothing in the record disputing these facts, we must assume that he was provided with adequate notice of the reasons for the examination along with an opportunity to respond, but that he simply refused to do so.

**2.** This of course does not rule out the possibility that pertinent local rules may more explicitly define the consequences of a non-movant's failure to respond to a motion for summary judgment.

**3.** Sandahl counters that he would be taken by surprise were we to consider Flynn's due process claim at this juncture, but this can't be so. After

all, the district court granted Flynn's request for injunctive relief based on its belief that the due process claim was likely to be a winner. Moreover, Sandahl had to be on notice of this claim since he addressed it in his cross-motion for summary judgment. Hence Sandahl has not presented us with any reason why we cannot consider Flynn's due process claim.

██ But more fundamentally, we do not believe that the requirements of due process were ever triggered in this case. The principle that an employee with a property interest in his job is entitled to some type of a pretermination hearing rests on the assumption that his employer has taken some action to deprive him of his job. *See Bigby v. City of Chicago,* 766 F.2d 1053, 1056 (7th Cir. 1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) ("To make out a case under the [due process] clause one must therefore show first that one was deprived of life, liberty or property."); *Kimbrough v. O'Neil,* 523 F.2d 1057, 1064–65 (7th Cir.1975) (Stevens, J., concurring) (same). Yet there is absolutely nothing in the record before us suggesting that the order to take a psychiatric examination by itself was tantamount to a notice of termination which deprived Flynn of a property interest in his job. Nor, for that matter, is there anything to support the assertion that the results of the examination would have had an adverse effect upon Flynn's job status. In fact, at the preliminary injunction hearing, Flynn's counsel repeatedly acknowledged that he was challenging the examination on the principle of privacy, not on whether it was a condition of employment. By not establishing the actual deprivation of a property interest, Flynn cannot seriously claim that the Constitution entitles him to a hearing.

Although not entirely clear, Flynn apparently raises an additional argument that the order to take a psychiatric examination attached a stigma to his reputation which in turn triggered the protections of due process. We say "apparently" because Flynn cites a decision from the Ninth Circuit, *Stewart v. Pearce,* 484 F.2d 1031 (9th Cir.1973), in which the court found that an employer's order that the plaintiff submit to a psychiatric examination implied that the plaintiff was mentally unfit for the job. The Ninth Circuit observed that this order stigmatized his reputation which made it unlikely that he would ever be employed in a similar position. *Id.* at 1034. The court concluded that to "stigmatize" the plaintiff without first offering him a hearing in which to challenge the grounds for the examination deprived the plaintiff of due process. *Id.* Although not

binding on this circuit, we think *Stewart* is no longer good law in light of the Supreme Court's decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). There the Court held that injury to reputation alone, apart from a deprivation of property or liberty, is insufficient to trigger the protections of due process. *Id.* at 701, 96 S.Ct. at 1160; *see also Robbins v. Bentsen,* 41 F.3d 1195, 1200 (7th Cir.1994) (observing that "the Constitution does not protect individuals against mere defamation," citing *Paul v. Davis*); *Colaizzi v. Walker,* 812 F.2d 304, 306–07 (7th Cir.1987) (remarking that after *Paul v. Davis,* "reputation is not property or liberty in the constitutional sense"). Consequently, we reject Flynn's invitation to rely upon *Stewart* as an alternate basis to find a violation of due process.

We turn now to Flynn's claim that the order to submit to a psychiatric examination violated his right to privacy under both the Federal Constitution and article I § 6 of the Illinois Constitution. He specifically claims that compelling him to submit to a psychiatric examination will force him to disclose confidential information and that this constitutes a violation of his right to privacy.

██ As a preliminary matter we reject the district court's determination to knock out this claim on the grounds of qualified immunity. Qualified immunity only shields defendants in their individual capacity from money damages. *Knox v. McGinnis,* 998 F.2d 1405, 1412 (7th Cir.1993). Here Flynn's claim was against Sandahl in his official capacity for injunctive relief. Therefore, qualified immunity had no application to this case.

██ That the district court erred on this point does not mean that we must reverse its judgment, however. We may affirm a grant of summary judgment on alternate grounds as long as they are supported by the record. *See Meredith v. Allsteel, Inc.,* 11 F.3d 1354, 1358 (7th Cir.1993). Although this circuit has not yet had the occasion to decide whether a compelled psychiatric examination violates an employee's right to privacy, this issue has been taken up by the First Circuit in *Daury v. Smith,* 842 F.2d 9 (1st Cir.1988). In *Daury* a school principal contended that

his right to privacy was violated when the school committee required him to submit to a psychiatric examination. The First Circuit recognized that an individual may have a privacy right not to have personal matters disclosed. *Id.* at 13. The court was careful to note, however, that a "privacy right ... must often give way to considerations of public interest." *Id.* The court found that the school had a legitimate interest in providing a safe educational environment for its students. On balance, the court held that requiring a teacher to submit to a psychiatric examination is justified where the school has reason to believe that the teacher poses a threat to students under his supervision. *Id.*

■ We need not decide whether the order requiring a psychiatric examination violated Flynn's right to privacy, because even if it did, we agree with the First Circuit that this right must give way to considerations of the public interest. Here, the State has demonstrated an overriding penological interest in maintaining a stable prison work force. Sandahl testified that correctional officers, especially those such as Flynn who work with a small shift, must be able to depend on one another to carry out their duties and protect each other in the event there is a threat to their safety or the safety of the inmates. It is undisputed that Sandahl received complaints from Flynn's peers that he had threatened them with physical harm. On these facts, we think that the State demonstrated a justifiable basis for requiring the psychiatric examination. Because Flynn offered no facts to contradict the Sandahl's position, we see no basis to upset the district court's judgment.

■ Flynn also contends that the order to take the psychiatric examination violated his right of privacy under article I § 6 of the Illinois Constitution. However, Flynn's complaint was brought under 42 U.S.C. § 1983, which requires a violation of federal law. *See Pesce v. J. Sterling Morton High Sch. Dist.*, 830 F.2d 789, 795 (7th Cir.1987). Since there is nothing in Flynn's complaint indicating that he was asserting a pendant state claim based on invasions of his right to privacy, he should pursue this claim in the Illinois state courts.

## III.

Flynn has failed to establish that Sandahl's order requiring him to submit to a psychiatric examination deprived him of a property or liberty interest which triggered the protections of due process. Furthermore, any right of privacy which may have been infringed by Sandahl's order was more than outweighed by the State's overriding penological interest in maintaining a stable prison work force. Therefore, the judgment of the district court is AFFIRMED.