**Frank MOLESKY, Plaintiff,**

**v.**

**Kay WALTER, et al., Defendants.**

**No. CY–95–3132–LRS.**

United States District Court,
E.D. Washington.

June 7, 1996.

Frank Molesky, Airway Heights, pro se.

Douglas W. Carr, Asst. Attorney General, Olympia, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SUKO, United States Magistrate Judge.

BEFORE THE COURT is the defendants' motion for summary judgment (Ct.Rec. 26). Plaintiff is proceeding pro se. Defendants

are represented by Doug Carr, Esq., and Colleen Evans, Esq., Assistant Attorneys General for the State of Washington. Both parties have consented to proceed before the magistrate judge.

This is a 42 U.S.C. § 1983 action in which plaintiff alleges he was compelled to undergo a psychological examination in violation of his constitutional rights. The plaintiff is an inmate at the Airway Heights Corrections Center (AHCC). Kay Walter is the superintendent at AHCC. Defendants Lawrence and Howard are staff members at AHCC.

### FACTS

Although the plaintiff has "responded" to each of the material facts presented by the defendants, the following facts are not in dispute (Ct.Rec. 29 and 33):

1. Plaintiff is a prisoner incarcerated pursuant to a judgment and sentence entered in Thurston County. Plaintiff was convicted of three counts of First Degree Child Molestation.

2. On or about March 10, 1993, an offender profile of the plaintiff was completed at Washington Corrections Center (WCC).

3. On March 31, 1993, plaintiff was transferred from WCC to the Washington State Penitentiary (WSP) where he was housed until June 13, 1995.

4. On June 13, 1995, plaintiff was transferred from WSP to Airway Heights Corrections Center (AHCC). AHCC houses minimum and medium security inmates.

5. On or about June 13, 1995, plaintiff underwent an intake assessment at the AHCC. As part of the assessment, the intake classification committee referred plaintiff for a psychological evaluation.

6. Department of Corrections (DOC) Policy 610.040 sets out the policy for intake screening. The authority of the policy stems from RCW 72.09.050 which directs that an intake screening will be completed immediately upon an inmate's arrival at a DOC facility.

7. The stated purpose of the intake screening is to establish a means by which a facility receiving offenders can determine need for immediate medical, dental or mental health attention and identify any need for continuation of medications or other care. The policy further states that an initial recommendation will be made for the suitability of placing an offender in the general population.

8. As of March 3, 1995, there was no mental health evaluation in plaintiff's central file.

9. As of June 1995, the Offender Based Tracking System Legal Fact Sheet indicated plaintiff was eligible for camp/work release/pre-release transfer.

10. On July 25, 1995, plaintiff's counselor, Kerry Lawrence, referred him for a psychological evaluation. Lawrence made the referral pursuant to an intake classification team decision dated July 7, 1995.

11. DOC Policy 320.400 sets out the definition and purpose of the case management system. The general authority for the policy stems from RCW 72.09.050. Case management is the department-wide system that matches the offender with the best resources available and assists the offender in acquiring the knowledge and skills necessary for a productive and socially acceptable lifestyle in the community.

12. Prior to placement in a minimum custody facility, an offender who has been convicted of first degree child molestation is required to have undergone a psychological evaluation no less than two years ago. This is pursuant to DOC Policy 300.380.

13. On August 16 and 21, 1995, plaintiff participated in different parts of a mental health assessment.

14. Plaintiff underwent a standard psychometric assessment test, the type done for inmates who are referred for possible custody promotion.

15. On August 16, 1995, plaintiff took a standard "paper and pencil" test, as well as the Minnesota Multiphasic Personality Inventory (MMPI) and the Personality Assessment Inventory.

16. On the MMPI test, plaintiff answered all the questions except one. There were no

omissions on the Personality Assessment Inventory.

17. The psychometric test report, dated August 21, 1995, states the examination was performed with plaintiff's consent to participate in testing and interviews.

18. The purpose of plaintiff's psychometric assessment was to determine his current functioning and to estimate the strength and resilience of his control over his behavior. This information would then help determine whether he would be an acceptable risk for camp placement. The mental health assessment performed on the plaintiff was conducted pursuant to a standard format used for all mental health assessments at AHCC.

19. In plaintiff's case, the mental health assessment was performed by Mr. William Howard. Mr. Howard has performed approximately 1000 formal written mental health assessments and an average of eight such assessments during the time he worked at AHCC.

20. In his August 21, 1995 report, Mr. Howard concluded that it was impossible to complete a meaningful and informed psychological assessment of plaintiff's readiness for camp placement. Howard opined that plaintiff's responses to all personality tests suggested a less than candid approach to testing. Because of his doubts about the validity of the test responses, Howard indicated that further interpretation was deemed inadvisable.

21. Mr. Howard only met with plaintiff during the time of the mental health assessment. Referrals for assessments come to the psychology department and are assigned to one of the staff psychologists. On August 2, 1995, Mr. Howard received the referral from Dr. Gary Lauby, his supervisor at AHCC.

## DISCUSSION

In his complaint (Ct.Rec.1), plaintiff alleges that his counselor, defendant Lawrence, informed him that if he did not submit to a psychological examination, he "would" be given a major infraction, "possibly" placed in administrative segregation, and "could" lose good-time credits. Plaintiff further alleges that he has an active criminal appeal and was concerned that psychological testing results could "somehow" be used against him. Plaintiff contends there was no justification whatsoever for the psychological testing.

In an affidavit filed by plaintiff, (Ex. 3 to Ct.Rec. 14), he states that Mr. Howard told him he would be infracted for failure to participate in mental health testing. According to plaintiff, Mr. Howard also suggested that depending on what the plaintiff said during the testing, his statements might be used against him in his pending criminal appeal.

In his complaint, plaintiff does not specifically allege which of his constitutional rights were violated. The court's order of service (Ct.Rec. 2) stated it was "unclear whether plaintiff has a protected liberty interest in refusing to undergo a psychological evaluation" or whether defendants had a legitimate penological interest in requiring him to undergo an evaluation. It would be reasonable to assume this court construed plaintiff's claim as one for an alleged violation of Fourteenth Amendment due process rights. The defendants claim as much.

In the materials submitted in response to defendants' motion for summary judgment, plaintiff appears to make claims for violations of his right to privacy (First, Third, Fourth and Ninth Amendments), the right against self-incrimination (Fifth Amendment), the right to assistance of counsel (Sixth Amendment), and the right to be free from cruel and unusual punishment (Eighth Amendment). Plaintiff also makes passing reference to Fourteenth Amendment procedural and substantive due process, and to equal protection.[1]

In their reply brief, defendants' counsel state that in February of 1996, they met with plaintiff for the purpose of a Fed.R.Civ.P. 26(f) conference. During the conference, they asked plaintiff to state specifically the

---

1. Plaintiff also cites the Seventh Amendment. This amendment confers the right to a jury trial. Plaintiff does not elaborate how the Seventh Amendment conceivably relates to his constitutional claims.

constitutional rights he alleges were violated. According to counsel, plaintiff would not specify the constitutional rights nor did he protest the characterization of his complaint in the order of service entered by the court. (See Report of 26(f) meeting located at Ct. Rec. 19.)

Defendants contend they filed their summary judgment motion in the belief that plaintiff's sole claim was for a violation of Fourteenth Amendment rights. Defendants ask the court to strike any other constitutional claims now raised by the plaintiff or at least allow them additional time to respond to what they perceive to be new claims.

The defendants' request is not without merit. However, the court does not believe it is necessary to strike any of plaintiff's claims or to grant a continuance. This is because the plaintiff's claims, regardless of the constitutional rights on which they are premised, cannot withstand summary judgment. Plaintiff does not have a protected liberty interest for Fourteenth Amendment purposes and even if plaintiff has some constitutionally protected interest, legitimate penological objectives justify infringement upon that interest.

At the outset, it is noted that defendants dispute whether plaintiff involuntarily participated in the testing. According to defendants, plaintiff was never told that he would be infracted or in any way punished for not participating in the testing. (Affidavits of Howard and Lawrence, Exs. F and G to Ct.Rec. 29.) Indeed, according to defendants, although an inmate can be infracted for failure to appear at an appointment, he cannot be infracted for refusal to participate in a psychological evaluation. (Affidavit of Lawrence and Lauby, Exs. D and F to Ct. Rec. 29.)

Plaintiff has arguably presented sufficient evidence (i.e. his own affidavit) raising a genuine issue of material fact concerning voluntary submission to the testing.[2] Nonetheless, even assuming plaintiff's participation

was less than voluntary, plaintiff's constitutional claims cannot survive summary judgment.

### A. Constitutionally Cognizable Liberty Interest

■ The first part of any Due Process analysis is whether there is in fact a "protected liberty interest." In *Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court acknowledged that states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. However, according to the Court:

> [T]hese restraints will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.,* at ——, 115 S.Ct. at 2300.

■ The court is not aware of any law suggesting that undergoing a psychological examination involves a restraint which exceeds an inmate's criminal sentence in such an unexpected fashion as to give rise to the protection of the Due Process Clause by its own force. In that regard, one should compare the cases of *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) and *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). In *Washington,* the Supreme Court found that an inmate possesses a significant liberty interest under the Due Process Clause in avoiding the unwanted administration of antipsychotic drugs. In *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Court found that the involuntary transfer of an inmate to a state mental hospital for treatment of mental disease or defect involves a liberty interest independently protected by the Due Process Clause.

---

2. This is true at least with respect to claims against defendant Howard. In his affidavit, plaintiff refers only to threats by Mr. Howard. In other responsive materials, plaintiff states that defendant Lawrence threatened him as well.

There has been no evidence presented that defendant Walter, the superintendent, threatened plaintiff with an infraction for failure to submit to the mental health assessment.

There can be little doubt that undergoing a psychological examination does not involve the same level of restraint or deprivation of personal liberty as that involved with an involuntary injection of drugs or an involuntary transfer to a mental hospital. Thus, assuming for summary judgment purposes that plaintiff felt compelled to submit to the psychological examination, this court finds that the Due Process Clause does not independently provide him with a liberty interest in avoiding such an examination.

The second question is whether undergoing a psychological examination imposes an atypical and significant hardship beyond the ordinary incidents of prison life. This court finds that it does not. A mental health assessment is the type of procedure an inmate can reasonably expect to undergo during the course of his confinement. It is an "expected" condition of confinement.

DOC Policy 610.040 requires an intake screening of an inmate upon his arrival at any DOC facility. The purpose of this policy is to "establish a means by which a facility receiving offenders can screen for the purpose of determining the need for immediate medical, dental or mental health attention and identify any need for continuation of medications or other care." Based on plaintiff's intake screening, he was referred for a mental health evaluation. (Exs. C and L to Ct.Rec. 29.) DOC Policy 610.040 is clearly reasonably related to legitimate penological objectives in that it helps to ensure that inmates in need of mental health attention will receive it. As noted by defendants, correctional facilities have a constitutional obligation to provide for the mental health needs of inmates. *Doty v. County of Lassen,* 37 F.3d 540, 546–47 (9th Cir.1994). For these reasons, plaintiff could reasonably expect to undergo a mental health evaluation.

DOC Policy 300.380 pertains to "Classification–Custody Level." The purpose of the policy is to place offenders at the least restrictive custody level, consistent with the need to provide for staff, offender, and public safety. It provides that prior to placement in a minimum custody facility, offenders with a psychological evaluation older than two years and convicted of first degree child mo-lestation must undergo a Mental Health Community Risk Assessment. Plaintiff fits these criteria. According to the "Psychometric Report" from Mr. Howard (Ex. H to Ct.Rec. 29), plaintiff was referred for an evaluation to determine his psychological suitability for promotion to MI2 custody status and possible transfer to camp placement. Minimum custody inmates are accorded certain "Placement Security Designations." Based on defendant Howard's assessment, plaintiff was not referred for camp placement and remained at the MI3 level. Offenders with an MI3 designation cannot be placed in camp, pre-release or work release.

Mental health evaluations are clearly a legitimate penological tool for assessing whether an inmate constitutes too great a risk for placement in the much less restrictive environment of minimum custody, including the progressively less restrictive environments of camp, work release and pre-release. Classification of inmates is a necessary process for the effective management of correctional institutions. Mental health evaluations assist in that process. As such, any inmate could reasonably expect to undergo a mental health evaluation as part of the conditions of his confinement.

■ Plaintiff has not produced any evidence that he suffered any adverse consequences as a result of the mental health assessment. It is true that plaintiff did not receive a designation upgrade, however, the need for a determination of whether an upgrade should be given was precisely the reason for the mental health assessment. The Due Process Clause does not independently create in inmates a constitutional right to a particular custody classification. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (confinement in any of the state's institutions is within the normal limits or range of custody which the conviction has authorized the state to impose). Furthermore, there is no allegation by plaintiff, nor any proof offered by him, that an MI3 designation constitutes an atypical and significant hardship versus an MI2 designa-

tion such as would give rise to a state-created liberty interest.

Plaintiff cannot reasonably argue that the stigma of undergoing a psychological evaluation makes the evaluation an atypical and significant hardship. Indeed, it is doubtful whether there would be any stigma due to the fact that under DOC policy, numerous inmates are referred for such evaluations.

The plaintiff was not infracted because of his mental health assessment results or for his failure to obtain a designation upgrade. He did not lose any good-time credits. He did not spend any time in segregation.

For all of the foregoing reasons, the court finds plaintiff does not have a constitutionally protected liberty interest under the Due Process Clause which would make procedural due process or substantive due process protections applicable.

### B. Eighth Amendment (Cruel and Unusual Punishment)

In *Sandin*, the Supreme Court observed that inmates retain protection from arbitrary state action, "even within the expected conditions of confinement." According to the Court, they may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate. —— U.S. at ——, n. 11, 115 S.Ct. at 2302, n. 11. Undergoing a psychological evaluation is an "expected condition of confinement" for an inmate.

■ In the first instance, plaintiff is hard pressed to prove that a psychological evaluation is "punitive" in nature. As the discussion above makes clear, the purpose of such evaluations is primarily rehabilitative. Secondly, because such an evaluation is not an atypical or significant hardship, it cannot amount to cruel or unusual punishment. In *Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996), the Ninth Circuit recognized a connection between the due process analysis and the cruel and unusual punishment analysis. The circuit suggested that if, upon remand, the district court were to find that conditions of confinement violated an inmate's Eighth Amendment rights, they would also impose an "atypical and significant hardship" for due process purposes. Slip op. at ——–——.

Summary judgment for defendants on plaintiff's Eighth Amendment claim is appropriate.

### C. Right to Privacy

The plaintiff claims the psychological examination constitutes a violation of his right to privacy. Plaintiff's written submissions suggest a number of constitutional sources for this right including the First, Third, Fourth, and Ninth Amendments.

As an initial matter, it should be noted that at various times throughout its history, the Supreme Court has held that these constitutional amendments are applicable to the states through the Fourteenth Amendment Due Process Clause. *United Mine Workers v. Illinois State Bar Assoc.*, 389 U.S. 217, 222 n. 4, 88 S.Ct. 353, 356 n. 4, 19 L.Ed.2d 426 (1967) (First Amendment freedom of speech); *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) (Third Amendment); *Mapp v. Ohio*, 367 U.S. 643, 655–56, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961) (Fourth Amendment search and seizure). It has also been held that the Fourteenth Amendment encompasses and applies to the state's pre-existing fundamental rights recognized by the Ninth Amendment. *Wise v. Bravo*, 666 F.2d 1328, 1332 (10th Cir.1981) citing *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); and *Griswold v. Connecticut*, (cited *supra*). In the Ninth Circuit, the Ninth Amendment has not been interpreted as independently securing any constitutional rights for the purposes of making out a constitutional violation. *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir.1991), *cert. denied*, 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 650 (1992).

■ If plaintiff does not have a constitutionally protected liberty interest arising under the Fourteenth Amendment Due Process Clause, it would seem to follow that there cannot be an abridgment of his constitutional rights under the First, Third, Fourth, and Ninth Amendments. The protections of

these constitutional amendments would not apply because as a threshold matter, plaintiff does not have a constitutionally protected liberty interest under the Due Process Clause.

■ However, even assuming plaintiff has a constitutional right to privacy independently protected by the First, Third, Fourth or Ninth Amendments, defendants have justifiably curtailed plaintiff's exercise of that right. As discussed above, mental health evaluations promote legitimate penological objectives which clearly outweigh any individual right to privacy. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (prison regulation or policy is valid if reasonably related to legitimate penological interests).

In *Flynn v. Sandahl,* 58 F.3d 283 (7th Cir.1995), a correctional officer brought an action for injunctive relief against his warden, claiming the warden's request that he submit to a psychiatric examination violated his constitutional rights to privacy and to procedural due process. The Seventh Circuit held that it was necessary for the correctional officer's right of privacy to give way to considerations of public interest. The state demonstrated an overriding penological interest in maintaining a stable prison work force and the warden testified that correctional officers, especially those who worked small shifts, must be able to depend on one another to carry out their duties and protect each other in the event of a threat to their safety or the safety of the inmates. It was undisputed that the warden had received complaints that the plaintiff correctional officer had threatened fellow correctional officers with physical harm. *Id.* at 290.

In reaching its decision, the Seventh Circuit relied in part on a First Circuit decision, *Daury v. Smith,* 842 F.2d 9 (1st Cir.1988) involving the decision of a school committee to require a school principal to submit to a psychiatric examination. The First Circuit found that the school had a legitimate interest in providing a safe educational environment for its students and that on balance, requiring a teacher to submit to a psychiatric examination is justified where the school has

reason to believe the teacher poses a threat to students under his supervision. *Id.* at 14.

If there is sufficient justification for requiring correctional officers and school teachers to submit to mental health examinations, there can be no doubt that there is justification for requiring inmates to submit to such examinations. Correctional officers and school teachers are free civilians who enjoy constitutional rights to the fullest extent possible. Inmates do not enjoy constitutional rights to the same extent because of the very fact that they are incarcerated. It is easier to justify restraints on the constitutional rights of those who are already restrained. Safety concerns are much more manifest with respect to individuals who have already been convicted of harming others and for whom a lessening of custody restrictions is contemplated.

Based on the foregoing authorities, summary judgment for defendants on plaintiff's right to privacy claims is appropriate.

D. Equal Protection

■ The Equal Protection Clause provides that "No State shall … deny to any person within its jurisdiction the equal protection of the laws." The Clause requires that all persons similarly situated be treated alike. *Jackson Water Works v. Public Utils. Comm'n,* 793 F.2d 1090, 1092 (9th Cir.1986). Prisoners are protected under the Equal Protection Clause against invidious discrimination. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). The Clause also forbids unequal enforcement of valid laws where such unequal enforcement is the product of improper motive. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

■ Plaintiff does not have a fundamental constitutional right not to participate in a mental health evaluation. Furthermore, inmates do not constitute a suspect protected class. *McQueary v. Blodgett,* 924 F.2d 829, 834 (9th Cir.1991). As such, there is no need for prison officials to show a "compelling state interest" for requiring him to submit to a mental health evaluation. In the absence of a fundamental right or a suspect class, an

**1514**

inmate must establish that he or she was treated differently than other prisoners in his or her circumstances and secondly, that such unequal treatment was the result of intentional or purposeful discrimination. Even if the inmate can make this threshold showing, only rational basis review is warranted. This is a very deferential standard of review. If there is a rational basis for treating inmates differently and said disparate treatment is reasonably related to legitimate purposes, there is no equal protection violation. *Brandon v. District of Columbia Board of Parole*, 823 F.2d 644, 650–51 (D.C.Cir.1987).

■ Plaintiff has not offered any evidence that he was treated differently from inmates similarly situated to him. Plaintiff has not offered any evidence, circumstantial or direct, that defendants purposely discriminated against him by allegedly compelling him to participate in a mental health evaluation.

Summary judgment is appropriate on any Equal Protection claim asserted by plaintiff.

### E. Fifth and Sixth Amendments

■ Plaintiff asserts that compelling him to submit a mental health evaluation violates his Fifth Amendment right against self-incrimination. Plaintiff asserts that compelling him to submit to such an evaluation without the assistance of counsel violates his Sixth Amendment right.

Here again, one must acknowledge Supreme Court decisions finding that the protections of these amendments apply to the states through the Fourteenth Amendment Due Process Clause. *Andresen v. Maryland*, 427 U.S. 463, 470, 96 S.Ct. 2737, 2743, 49 L.Ed.2d 627 (1976) (Fifth Amendment right against self-incrimination); *Gideon v. Wainwright*, 372 U.S. 335, 342–43, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799 (1963) (Sixth Amendment right to assistance of counsel). Thus, if one does not have a liberty interest protected by the Due Process Clause, it would appear that Fifth and Sixth Amendment protections against state action are inapplicable.

■ In any event, the Fifth and Sixth Amendments are of no avail to the plaintiff.

Plaintiff argues that statements made during the evaluation might "somehow" be used against him in a pending appeal of his conviction. Such speculation is insufficient to sustain a Fifth Amendment claim. One who claims the privilege must be confronted by substantial and real hazards of incrimination, not merely trifling or imaginary ones. *United States v. Apfelbaum*, 445 U.S. 115, 125–27, 100 S.Ct. 948, 954–56, 63 L.Ed.2d 250 (1980). There is no evidence of a bona fide threat that plaintiff's mental health testing results will be used or actually have been used to his detriment in the appeals process. Indeed, there is no evidence that there has been any breach of the confidentiality of plaintiff's psychological testing results.

■ Plaintiff's mental health evaluation did not occur in the context of a criminal prosecution. The plaintiff had already been convicted. The evaluation was strictly part of an administrative process initiated by corrections officials. It was not a "critical stage" of a criminal prosecution. *Arsenault v. Massachusetts*, 393 U.S. 5, 6, 89 S.Ct. 35, 36, 21 L.Ed.2d 5 (1968). Accordingly, plaintiff was not entitled to assistance of counsel during the evaluation.

### CONCLUSION

In light of the rather clear absence of any issue of material fact on the merits of plaintiff's constitutional claims, it is unnecessary to address defendants' entitlement to qualified immunity from damages. For the same reason, it is unnecessary to address defendants' contention that plaintiff has failed to make any showing of personal participation by Superintendent Kay Walter in the ordering of the mental health evaluation.

**IT IS HEREBY ORDERED:**

1. Defendants' motion for summary judgment (Ct.Rec. 26) is **GRANTED.**

2. The parties shall bear their own costs.

3. The Clerk of the Court shall enter judgment accordingly and shall forward copies of this order to the plaintiff and to counsel for defendants.